Eric D. Lansverk (OSB 144700)
Eric.lansverk@hcmp.com
HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Ave., Suite 4600
Seattle, WA 98104
Telephone:   (206) 623-1745
Facsimile:    (206) 623-7789

Katherine A. Keating (Admitted *Pro Hac Vice*)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (Admitted *Pro Hac Vice*)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone: 415-675-3400
Facsimile: 415-675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE,** | Case No. 3:21-cv-00680-YY |
| Plaintiff, | **OBJECTIONS OF PLAINTIFF COURTHOUSE NEWS SERVICE TO FINDINGS AND RECOMMENDATIONS** |
| v. | |
| **NANCY COZINE**, in her official capacity as Oregon State Court Administrator, | **[ORAL ARGUMENT REQUESTED]** |
| Defendant. | |

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................ 2

ARGUMENT ..................................................................................................................... 3

I.    The F&R Presume the Validity of the Challenged Practice Rather than Testing It .............. 3

    A.    The F&R Mis-Read *Planet III* as Precluding Relief that Would Result in Immediate, Pre-Processing Access ................................................................................................. 4

    B.    The F&R Concluded Delays of Nine Business Hours Are Permissible by Presuming the Need for the Challenged Practice, Without Considering Alternatives ................. 6

II.    Defendant's No-Access-Before-Processing Policy Cannot Withstand Application of *Press-Enterprise II* ....................................................................................................................... 8

    A.    The F&R Minimize the Significance of Access Delays by Ignoring Evidence of Longer Delays and Measuring Them in "Business Hours" ........................................ 9

        1.    The F&R Failed to Consider the Complete Record of Delays, Which Show Delays Comparable with Delays Caused by Policies Enjoined in Other Cases ................................................................................................................ 10

        2.    Measuring Delays in "Business Hours" Assumes the Need for the Very Practice This Lawsuit Challenges ............................................................. 12

    B.    Defendant Has Not Established a Substantial Probability that an Overriding Interest Would be Impaired by On-Receipt Access .............................................................. 15

        1.    The F&R Ignore that Defendant Tried – and Failed – to Substantiate Concerns About Providing On-Receipt Access ...................................... 16

        2.    The F&R Improperly Relied on Defendant's Generalized and Conclusory Assertions About Confidentiality in Oregon Civil Court Records ........... 17

        3.    Key F&R Conclusions as to Risks Supposedly Posed by On-Receipt Access Are Based on Factual Errors ...................................................... 22

    C.    The F&R Erred By Not Applying the Critical Second Prong of the *Press-Enterprise II* Test, *i.e.*, Defendant's Burden of Demonstrating No Reasonable Alternatives. .......................................................................................................... 27

CONCLUSION ................................................................................................................ 30

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Courthouse News Serv. v. Schaefer*,
440 F. Supp. 3d 532 (E.D. Va. Feb. 21, 2020), *aff'd,* 2 F.4th 318 (4th Cir.
2021) ...............................................................................................................11

*Courthouse News Serv. v. Cozine*,
2022 WL 1000775 (D. Or. Apr. 4, 2022) ...........................................................1, 3

*Courthouse News Serv. v. Planet*,
2021 WL 1605216 (C.D. Cal. Jan. 26, 2021) ...........................................................4

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020) ("*Planet III*").................................................. *passim*

*Courthouse News Serv. v. Gabel*,
2021 WL 5416650 (D. Vt. Nov. 19, 2021)...............................................6, 7, 11

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
809 F.3d 1092 (9th Cir. 2016) ...........................................................................17

*F.T.C. v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997) ...........................................................................21

*Hansen v. United States*,
7 F.3d 137 (9th Cir. 1993) ...............................................................................20

*Index Newspapers LLC v United States Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020) ...........................................................................28

*Leigh v. Salazar*,
677 F.3d 892, 900 (9th Cir. 2012) ...........................................................................8, 9

*New York Civil Liberties Union v. New York City Transit Auth.*,
684 F.3d 286 (2d Cir. 2012)...............................................................................9

*Press-Enterprise Co. v. Sup. Ct.*,
464 U.S. 501 (1984) ("*Press-Enterprise I*") ...........................................................9

*Press-Enterprise Co. v. Sup. Ct.*,
478 U.S. 1 (1986) ("*Press-Enterprise II*").................................................. *passim*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**Statutes**

18 U.S.C. 2265(d)(3) ...............................................................................................23

28 U.S.C. § 636(b)(1) ...............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 72(b)(3) ...............................................................................................2

Fed. R. Civ. P. 5.2 ...............................................................................................17

UTCR 2.100 ...............................................................................................17, 26

UTCR 2.100(1)(a) ...............................................................................................17

UTCR 2.100(2)(a) ...............................................................................................17, 26

UTCR 2.100 (2)(c) ...............................................................................................17

UTCR 5.160 ...............................................................................................17

UTCR 21.070(3)(g) ...............................................................................................17

UTCR 21.080(3),(4) ...............................................................................................14

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - iii

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

# INTRODUCTION

Magistrate Judge Youlee Yim You issued findings and recommendations with respect to Courthouse News' motion for summary judgment (ECF 38) ("MSJ") on March 14, 2023. Findings & Recommendations (ECF 89) ("F&R"). Courthouse News objects to the F&R and respectfully urges the Court to reject them in whole and grant the motion for summary judgment.

The test from *Press-Enterprise Co. v. Sup. Ct.*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") governs Courthouse News' claim challenging Defendant's policy and practice of withholding all newly e-filed civil complaints until after court staff has completed clerical processing. *Courthouse News Serv. v. Planet*, 947 F.3d 581, 596 (9th Cir. 2020) ("*Planet III*"). The Court has already resolved the initial stage of the *Press-Enterprise II* test, concluding that the First Amendment's qualified access right attaches to e-filed complaints when they are received by the court rather than after court staff have processed and "accepted" them. *Courthouse News Serv. v. Cozine*, 2022 WL 1000775, at *1-2 (D. Or. Apr. 4, 2022). At issue now is "the fact-intensive" second stage of the *Press-Enterprise II* test, id. at *2, which requires **Defendant** to demonstrate both a "'substantial probability'" that an overriding interest "would be impaired by immediate access" and that "no reasonable alternatives exist to 'adequately protect'" that interest. *Planet III*, 947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).[1]

The analysis of the F&R is fundamentally flawed and also rests on a number of factual errors. It could not survive clear error review, let alone the de novo review this Court will conduct. *First*, the F&R improperly shift the burden of proof onto Courthouse News, concluding

---

[1] Throughout these Objections, references to the *Press-Enterprise II* test refer to this second stage of the test.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

that "**Plaintiff** has failed to show that the equilibrium between the[] competing interests is out of balance ….." F&R at 9.[2]  *Second*, an assumption that courts should process e-filed civil complaints before making them available to the public infects every step of the F&R analysis. No part of the F&R can survive this initial presumption that the very practice Courthouse News challenges is necessary.  *Third*, the F&R permit access restrictions to **all** new e-filed civil complaints even though the record shows Defendant's stated concerns about confidentiality would **not** have been implicated at least **99.98%** of the time.  *Finally*, the F&R excuse Defendant entirely from demonstrating that no reasonable alternatives exist that would adequately protect her asserted interests, the second prong of the *Press-Enterprise II* test.

The fatally flawed F&R should be rejected.  Defendant's policy cannot withstand the rigorous scrutiny of *Press-Enterprise II*, and summary judgment in favor or Courthouse News should follow.

**STANDARD OF REVIEW**

Under the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). If a party objects to the findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id*.; Fed. R. Civ. P. 72(b)(3).

---

[2] All emphases in these Objections are added unless otherwise noted.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 2

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## ARGUMENT

**I.    The F&R Presume the Validity of the Challenged Practice Rather than Testing It**

There is no dispute that the press and public experience significant and pervasive delays in accessing newly e-filed civil complaints. *See* MSJ Reply (ECF 73) at 4-5; Declaration of Jimmy Shimabukuro ("Shimabukuro Decl."), Exhs. 1-15 (ECF 42); Declaration of L. Samuel Dupree ("Dupree Decl."), Exh. 6 (ECF 59-7). The parties also agree that the delays are caused by Defendant's policy of withholding new complaints from the press and public – effectively sealing them – until court staff complete administrative processing, something that often does not happen for a day or more after the complaint is filed. *See id.*; MSJ Response (ECF 57) at 14-15.

Under the First Amendment, the press and public have a qualified right to access new, non-confidential civil complaints. *Planet III*, 947 F.3d at 585. That right attaches when the court receives the complaint, *id.*; *Cozine*, 2022 WL 1000775, at *2, but the qualified nature of the right means that the press and public don't ***necessarily*** have the right to see complaints immediately. A practice that delays access to civil complaints can be constitutional, but only if it satisfies the following test:

> To survive *Press-Enterprise II*'s two-prong balancing test, [the defendant] must demonstrate first that there is a "substantial probability" that [an overriding interest] would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest.

947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).

Though Judge You cites this formula in the Findings and Recommendations, F&R at 4, ***she does not use it to test Defendant's policy***. Instead, based on a misreading of *Planet III*, she begins with the presumption that access prior to administrative processing is off the table. From there, the result is preordained – preservation of the status quo.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 3

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

A.      **The F&R Mis-Read *Planet III* as Precluding Relief that Would Result in "Immediate, Pre-Processing Access"**

In *Planet III*, the Ninth Circuit explained that its conclusion "that the qualified right of access to nonconfidential civil complaints arises when they are filed with the court" does not "***demand***[] immediate, pre-processing access to newly filed complaints." 947 F.3d at 594. This observation merely emphasizes the qualified nature of the right. The access right does not necessarily or invariably "demand" immediate, pre-processing access to new civil complaints. Rather, the government has the opportunity to justify under the two-prong test a practice that results in access delays following the court's receipt of the complaint. If it fails to carry that burden, the challenged practice cannot stand.

Thus, although the Ninth Circuit does not view the right of access as "***demanding*** immediate, pre-processing access" to new complaints, *Planet III*, 947 F.3d at 594, this does not mean the Court cannot consider alternatives that would result in pre-processing access. Otherwise, the Ninth Circuit could not have agreed that Ventura County's "no-access-before-process policy" was unconstitutional. *Id*. at 596-98; *see also Courthouse News Serv. v. Planet*, 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021) (amended judgment declaring: "Planet's policy… requiring that newly filed complaints [ ] be 'processed' prior to providing the press and public with access to those complaints violates CNS's qualified First Amendment right of timely access to newly filed complaints [ ] for the reasons stated in *Planet III*."). The F&R thus erred in concluding that because the First Amendment "does 'not demand[] immediate, pre-processing access,'" any alternative that would result in "immediate, pre-processing access" is improper and

OBJECTIONS OF PLAINTIFF COURTHOUSE NEWS SERVICE TO FINDINGS AND RECOMMENDATIONS - 4

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

need not be considered.  F&R at 13 (quoting *Planet III*, 947 F.3d at 594).[3]

This leads to the inevitable – and flawed – conclusion that the challenged practice is valid

as a matter law, without proper application of the *Press-Enterprise II* test. The extent to which

Judge You presumed the validity of the challenged practice instead of scrutinizing it is evident in

her comments about what causes delays:

> [D]efendant has produced evidence tending to show that many of the most acute
> delays were caused or at least influenced by external events not within
> defendant's control, not least of which was the massive disruption to court
> operations during the COVID-19 pandemic, which included hiring freezes,
> staffing shortages, mandatory furloughs, and the implementation of new
> technologies and processes to keep courts functioning.  Other spikes in delay
> times are correlated with the closure of the Multnomah County Courthouse, the
> largest in the state, for three days to facilitate the move to a new courthouse
> building, and an upgrade of the e-filing system and the inevitable "delays,
> outages, and processing issues" that followed.  … Severe winter weather and
> court closures due to wildfires also appear to have had at least some effect on the
> specific overall delay numbers.

F&R at 13-14.

Each of these "external events," *id*. at 14, caused delay **only because of Defendant's**

**policy of withholding complaints for processing**.  These vicissitudes, along with more routine

ones like staff vacancies, vacations, and illnesses, will always cause delays when a court

withholds complaints for processing.  Declaration of William Girdner (Girdner Decl."), ¶¶ 1, 19

(ECF 39).  On the other hand, courts that provide pre-processing access are immune to virtually

all such access disruptions.  Thus, the "external events" noted by Judge You might have been

beyond Defendant's control, F&R at 13, but the resulting delays were not.  Defendant cannot

---

[3] Based on this error, Judge You declines to consider whether a press review queue is a
reasonable alternative under the *Press-Enterprise II* test, observing that "there is no
constitutional command that requires defendant to adopt that system."  F&R at 13.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 5

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

control wildfires or protests or pandemics, but she can control whether or not to withhold complaints for processing. Delays caused by the policy of withholding for processing cannot be excluded from consideration simply because external events might explain why processing took a long time.

B.    **Judge You Concluded Delays of Nine Business Hours Are Permissible by Presuming the Need for the Challenged Practice Without Considering Alternatives**

Another fundamental error in the F&R is its unreasoned characterization of delays of up to nine "business hours" in the short period leading up to summary judgment briefing[4] as "'near perfect' access," despite acknowledging that Oregon Circuit Courts withheld ***26%*** of e-filed non-confidential civil complaints in that period until at least the following day. F&R at 11, 14 (100% - 74% = 26%). The F&R's analysis on this point is opaque, but whatever the rationale, it cannot be squared with the *Press-Enterprise II* test.[5]

To the extent Judge You's approval of the July 13-August 31 delays of 26% until at least the next day represents a finding that such delays are *per se* constitutional and need not be justified under *Press-Enterprise II*, this is clear error. The Ninth Circuit explicitly requires the

---

[4] This period spanned July 13 to August 31, 2022. For context, discovery closed on July 15, and Courthouse News filed its summary judgment motion on August 1, 2022.

[5] The F&R cite two cases for the proposition that the current delays in Oregon amount to "near perfect" access. F&R at 14-15. Neither case supports that proposition. The reference to "near perfect" access in *Planet III* relates to Ventura County's scanning policy, which provided 97% ***same-day*** access in a paper-filing court and was itself an alternative to Planet's unconstitutional no-access-before-process policy. The *Courthouse News Serv. v. Forman* order is neither instructive, nor good authority for the cited proposition. The district court dissolved the order following a settlement in which the Florida courts agreed to provide statewide pre-processing access to all new e-filed civil complaints. *See* Fetterly Reply Decl. (ECF 74) at ¶¶ 3, 4, Exhs. 36, 37.

test to be applied to departures from "immediate access." *Planet III*, 497 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14) (Defendant must "demonstrate first that there is a 'substantial probability' that [an overriding interest] ***would be impaired by immediate access***"); *see also Courthouse News v. Gabel*, 2021 WL 5416650, at *14 (D. Vt. Nov. 19, 2021) ("the focus must be on whether ***any*** delay is appropriate because any restriction on the First Amendment right of access must have 'sufficient justification'") (quoting *Newsday LLC v. County of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013)).  "As the Second Circuit has observed, when a governmental entity contends that the 'limited denial of access' is insubstantial, it 'begs the question of whether there was a sufficient factual basis for denying access at all.'" *Gabel*, 2021 WL5416650, at *14 (quoting *ABC, Inc. v. Stewart*, 360 F.3d 90, 100 (2d Cir. 2004).

If, instead, Judge You approves of the July 13-August 31 delays because she (1) has decided that withholding for processing is always an acceptable practice; and (2) can see from the record that delays in this period (with 26% unavailable until at least he following day) represent the best access Oregon circuit courts can provide while still withholding for administrative processing, *see* MSJ Reply at 9, that approach is also fundamentally unsound. The fact that most complaints filed during this period – with courts on their best behavior during litigation – were available by the day after they were filed, *see* F&R at 11, does not empower the Court to disregard earlier periods of longer delays or ignore reasonably available alternatives that would both avoid these delays and adequately protect the government's asserted interest.  As discussed below, the record reflects that over the course of more than three years, filtering based on filer-provided information would have been 99.98% effective (or better) at protecting confidential information in any of the pre-processing access methods available to Defendant.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 7

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Declaration of Katherine Keating, ¶¶ 17, 23(a), (c), (e), 27, 31-32, 34-35 & Exhs. 4-7, 9 (ECF 44) ("Keating Decl."); *see* MSJ at 25-26.  Defendant's practice of withholding for processing cannot survive a faithful application of *Press-Enterprise II* to these facts.

Yet another possibility is that Judge You misconstrues references to the *Press-Enterprise II* test as a "balancing" test, *see, e.g., Planet III*, 947 F.3d at 595-96, to mean courts can conduct their own *ad hoc* weighing of "the vital public interest in preserving the media's ability to monitor government activities," on the one hand, against "the government's need to impose restrictions if necessary for safety or other legitimate reasons," on the other.  *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012).  These interests are instead balanced **by applying the Press-Enterprise II test**.  They are **not** balanced by putting delays on one side of a scale and the government's asserted interest on the other, and making a subjective determination of which way the scale tips, as the F&R do.  F&R at 14-15.

The Supreme Court addressed this precise issue in *Press-Enterprise II* when it observed that "[i]t is difficult to disagree **in the abstract** with that court's analysis balancing the defendant's right to a fair trial against the public right of access" but cautioned that "[i]t is also important to remember that these interests are not necessarily inconsistent."  478 U.S. at 7.  The resulting test requires not ad hoc balancing of abstract interests but a **factual** "demonstrat[ion] that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 13-14 (quoting *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*")).  As the Ninth Circuit explained in the context of court record delays, demonstrating both a "'substantial probability'" that an overriding interest "would be impaired by immediate access" and "that no reasonable alternatives exist to 'adequately protect' that

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

government interest" is how a defendant "survive[s] *Press-Enterprise II*'s two-prong balancing

test." *Planet III*, 947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).

## II.    Defendant's No-Access-Before-Processing Policy Cannot Withstand Application of the *Press-Enterprise II* Test

The test this court must apply to Defendant's no-access-before-process policy, and the

burden Defendant must carry, is plainly set out in *Planet III*:

> To survive *Press-Enterprise II*'s two-prong balancing test, [the defendant] must
> demonstrate first that there is a "substantial probability" that [an overriding
> interest] would be impaired by *immediate access*, and second, that *no reasonable
> alternatives* exist to "adequately protect" that government interest.

947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).

Defendant must satisfy her burden under this "fact-intensive" test, *Leigh*, 677 F.3d at

900, without relying on generalized assertions or speculation.  *New York Civil Liberties Union v.

New York City Transit Auth.*, 684 F.3d 286, 303 (2d Cir. 2012); *Press-Enterprise I*, 464 U.S. at

510.  "[A] court cannot rubber-stamp an access restriction simply because the government says it

is necessary."  *Leigh*, 677 F.3d at 900.  "[C]ourts have a duty to conduct a thorough and

searching review of any attempt to restrict public access."  *Id*.  Correct application of this test

reveals Defendant cannot justify her no-access-before-process policy, and Courthouse News is

entitled to summary judgment.

### A.    The F&R Minimize the Significance of Access Delays by Ignoring Evidence of Longer Delays and Measuring Them in "Business Hours"

There is no dispute that the access delays result from the challenged "no-access-before-

process" policy, and despite confusion sown by Defendant's choice to present delays in terms of

"business hours" the parties also agree on the length of delays. *See* MSJ Reply at 4-5.  However,

instead of considering the complete record, the F&R instead cherry-picked select evidence on

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 9

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

delays while disregarding the complete, undisputed record.

> **1.    The F&R Failed to Consider the Complete Record of Delays, Which Show Delays Comparable with Delays Caused by Policies Enjoined in Other Cases**

The F&R accurately summarize delays, as measured in calendar days, on an annual basis in each of 2019, 2020, 2021, from January to April 2022, and then in a seven-week period preceding Defendant's summary judgment response (July 13 – August 31, 2022).  F&R at 11. However, the annual aggregate, statewide delay statistics cited in the F&R do not tell the complete story because individual delays during that period were regularly worse, varying in degree from court to court, and from month to month and week to week. MSJ at 4-5 (citing Shimabukuro Decl., ¶¶ 12-14, Exhs. 2-15; Declaration of Jonathan Fetterly ("Fetterly Declaration") ¶¶ 28-31, Exhs. 26-33 (ECF 45)).

For instance, the record reflects the following:

- **Lane County – 2021**: approximately ***72%*** of all newly e-filed civil complaints were unavailable to the press and public on the day of filing, with approximately ***43%*** delayed by two days or longer (Fetterly Decl., ¶¶ 30-31, Ex. 31);

- **Marion County – 2021**: approximately ***65%*** of all newly e-filed civil complaints were unavailable to the press and public on the day of filing, with approximately ***19%*** delayed by two days or longer (*Id.*, Ex. 32);

- **Multnomah County – 2020 -** approximately ***53%*** of all newly e-filed civil complaints were unavailable to the press and public on the day of filing, with approximately ***24%*** delayed by two days or longer (*Id.*, Ex. 30);

Judge You was incorrect when she concluded that "the magnitude of delays in accessing

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 10

newly filed civil complaints in Oregon is much smaller than in *Planet III* and other cases." F&R at 9. While the annual aggregate, statewide delays in Oregon over a forty-month period may not resemble the delays in Ventura County, California during the two-week periods cited in *Planet III,* the delays in Lane County, Oregon are very comparable to the Ventura County delays. *Compare Planet III*, 947 F.3d at 597-98 ("one-fifth to two-thirds of newly filed complaints" delayed "two or more court days"); *with* Shimabukuro Decl., ¶ 13 & Exh. 7 (approximately *43%* of newly filed complaints at Lane County delayed two or more court days in 2019); Ex. 8 (approximately *59%* of newly filed complaints at Lane County delayed two more court days in 2020); and Ex. 9 (approximately *38%* of newly filed complaints at Lane County delayed two or more court days in 2021).[6]

The access delays in other cases cited by Courthouse News are also comparable to those in this case. Judge You disregarded the monthly variation in delays in *Schaefer* and the fact that delays in that case were often comparable to the delays at issue here. *Courthosue News v. Schaefer*, 440 F. Supp. 3d 532, 547-49 (E.D. Va. Feb. 21, 2020) (declaring process-first policy unconstitutional where record reflected monthly variation in delays, including months where 30%-60% of new complaints were delayed by one or more court days), *aff'd,* 2 F.4th 318 (4th Cir. 2021).

Judge You similarly disregarded the record of delays in *Gabel*, where delays "varie[d] significantly between court units and within each court unit," with many counties withholding

---

[6] While comparing year-long delays in Lane County with the two-week periods in Ventura County is not necessarily an apples-to-apples comparison, sustained delays over a year-long period are at least equally, *if not more*, problematic than the shorter two-week periods considered by the *Planet* courts.

OBJECTIONS OF PLAINTIFF COURTHOUSE NEWS SERVICE TO FINDINGS AND RECOMMENDATIONS - 11

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

access to approximately 30-40% of new e-filed complaints until after the day of filing. *Gabel*, 2021 WL 5416650, at **7-8, 18 (permanently enjoining process-first policy in case involving same Tyler e-filing system used in Oregon).

Judge You also did not address *Courthouse News Serv. v. Tingling*, a case in which the district court enjoined the New York County state court's policy of restricting access to e-filed civil complaints until after processing based on delays similar to those here. 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) (hearing transcript discussing example of delay where, on a Tuesday, "58 percent of the cases were made available to the public and the press on the same day but 42 percent of those Tuesday cases were not"); *see* MSJ Reply at 34.

 Despite the extensive (and undisputed) record of delays, Judge You focused on "the most recent statistics for the six-week period prior to the filings of plaintiff's motion for summary judgment." F&R at 14-15. There is no basis for favoring Defendant's self-serving and limited sample (created after the close of discovery and in anticipation of a summary judgment opposition), and disregarding delays from the prior 40 months. Moreover, even during this best-behavior period 26% of complaints were delayed, and nothing prevents the return of even longer delays if the Court grants no relief. *See, e.g.,* Girdner Decl., ¶¶ 62-63; *see also Planet III*, 947 F.3d at 598 n.10 ("nothing other than the injunction in this litigation prevents Ventura County from returning to its [former] policy").

### 2.    Measuring Delays in "Business Hours" Assumes the Need for the Very Practice This Lawsuit Challenges

Courthouse News also objects to Judge You's conclusion that the delays should be measured in court business hours. F&R at 12-14. Measuring a delay in "business hours" rather than calendar days yields a smaller number but does not make the actual delay any shorter or less

OBJECTIONS OF PLAINTIFF COURTHOUSE NEWS SERVICE TO FINDINGS AND RECOMMENDATIONS - 12

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

problematic.  Defendant's rationale for measuring delays in "business hours" is that clerks can't process complaints when the court is closed.  *See, e.g.*, MSJ Response at 12-13.  However, this measurement once again assumes the necessity of withholding complaints for processing – ***the very practice Courthouse News challenges through this lawsuit***.

   In contrast, measuring in calendar days reflects time as humans actually experience it. The press and public care whether a complaint was filed today or yesterday or last week.  They do not know or care how many hours court staff were working during that span.  The daily news cycle – and the reality that most people sleep at night – means that a delay until the following day or longer is qualitatively different than a delay within a single day.  *See* Girdner Decl., ¶ 13. When a complaint is delayed until the following day, news of its filing is likely to be overtaken by the next day's news.  *Id*.  The public is less likely to spare attention for what is literally old news.  The "business hours" measurement obscures whether the complaint's availability crossed this critical threshold from one day to the next and is thus not a useful way to understand the issues before the Court.

   In the final analysis, there is no real dispute as to the existence and length of the delays at issue, only as to the most useful way to measure them.  For example, the parties agree that Washington County Circuit Court received the e-filed complaint in Case No. 22CV08163 on Tuesday, March 8, 2022 at 12:41 p.m.  *See* Declaration of Eric Lansverk, Exhs. 1, 2 (ECF 43); Dupree Decl., Exh. 6.  They also agree that court staff completed administrative processing of the complaint on Wednesday, March 9 at 11:40 a.m., and that it would have been available to Courthouse News either at the courthouse or via OJCIN, Oregon's online access system, within a few minutes of 11:40 a.m. on Wednesday.  *Id*.  Because Courthouse News was unable to review

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

this complaint until Wednesday, one calendar day after it was e-filed, Courthouse News describes this as a delay of one calendar day. Defendant describes the same delay as one of 7.9 "business hours," meaning court staff worked during only 7.9 hours of the time the complaint was unavailable.

As another example, the parties agree that Marion County Circuit Court received the e-filed complaint in Case No. 22CV03693 on Friday, January 28, 2022 at 11:32 a.m., that court staff completed administrative processing of the complaint on Monday, January 31 at 11:31 a.m., and that it would have been available to Courthouse News within a few minutes of 11:31 a.m. *Id*. Because Courthouse News was unable to review this complaint until Monday, three calendar days after it was e-filed, Courthouse News describes this as a delay of three calendar days. Defendant describes the same delay as one of 8.9 "business hours," meaning court staff worked during only 8.9 hours of the three calendar days during which the complaint was unavailable.

Finally, the F&R further confuse the measurement question by incorrectly stating that while e-filing is available 24/7, "Oregon courts are not open to the public at all hours and on all days, and court personnel are obviously not available around the clock to provide public or media access." F&R at 12. To the contrary, Oregon courts *are* open for both e-filing and court record access 24 hours a day. Declaration of Karina Brown, ¶¶ 9-10 (ECF 40). Were it not for Defendant's process-first policy Courthouse News and other OJCIN users would have near-immediate access to new complaints, regardless of when courthouse is physically open or court personnel are actively working.[7]

---

[7] The F&R fault Courthouse News for treating a complaint as e-filed on the day the court receives it, even if that day is a weekend or holiday. F&R 13. Judge You chides Courthouse

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 14

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**B.      Defendant Fell Far Short of Demonstrating a Substantial Probability that an Overriding Interest Would be Impaired by On-Receipt Access**

Though it is Defendant's burden to "demonstrate … a 'substantial probability'" that its interest in protecting confidential civil filings "would be impaired by immediate access," *Planet III*, 947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14), Courthouse News undertook an analysis of Defendant's complaint data spreadsheet to determine how often clerk processing resulted in the rejection of e-filed documents based on confidentiality.  Keating Decl., ¶¶ 2-37. This analysis confirmed that, contrary to Defendant's supposition, filer mistakes that implicate confidentiality are extremely rare.  Filtering based on filer designation was at least ***99.98%*** effective, with at most 26 out of 144,244 filings (or 0.018%, less than two hundredths of one percent) rejected for reasons related to confidentiality.  *Id.*, ¶¶ 17, 23(a), (c), (e), 27, 31-32, 34-35 & Exhs. 4-7, 9; see MSJ at 25-26.

Judge You nevertheless concluded that Defendant's interest in preventing "[t]he inadvertent disclosure of sensitive information to the media" is related to an interest in "the fair and orderly administration of justice" – the government interest from *Planet III* – and that "this interest would be impaired if the human review policy was not in place."  F&R at 8.  As explained below, this conclusion is based on several important factual errors.  More fundamentally, evidence that confidentiality-implicating filer errors ***almost never happen*** cannot demonstrate a substantial probability that confidentiality interests would be impaired by pre-

---

News for observing that Oregon's own rules consider a complaint e-filed on a Saturday as filed on a Saturday, UTCR 21.080(3),(4), as if the observation is inconsistent with the principle that court rules cannot trump the First Amendment.  F&R at 13.  There is no need to quibble about when to start the clock, however, as the record reflects that starting the clock only when the court opens impacts the delay statistics by only a few percentage points.  *See* Reply at 5-7 (35% vs. 39% unavailable on the day of filing); Shimabukuro Decl., ¶¶ 11, 13 & Exh. 6.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

processing access.

### 1.    The F&R Ignore that Defendant Tried – and Failed – to Substantiate Concerns About Providing On-Receipt Access

The record reflects that when Courthouse News asked the Oregon Judicial Department ("OJD") to stop the practice of withholding complaints until after processing, administrators' immediate reactions were negative.  Fetterly Decl., Exh. 20 at 8, 13-14, 44, 53, 59; *see* MSJ at 12, 14-16.  OJD staff tested the intuitive reaction of administrators by asking courts that make complaints available on receipt – including those using the same software vendor as Oregon – whether this practice had led to problems.  *See, e.g.,* Fetterly Decl., Exh. 20 at 20-22, 66-80; MSJ at 12-14; 31-32.  Their investigation failed to substantiate administrators' belief that discontinuing the practice of withholding complaints for processing would cause problems related to confidential filings or anything else.  *Id*.  In fact, no personnel from other courts relayed ***any*** problems, negative experiences, or bad outcomes arising from a press review queue or other method of on-receipt access to new civil complaints.  Fetterly Decl., Exhs. 5 (RFA 4) and 3 (Interrogatories 8-10).

This is consistent with Courthouse News' own experience.  *See* Girdner Decl., ¶¶ 46-52. Indeed, federal district courts have been providing on-receipt access for decades, and various state courts have done so for many years.  *Id*. ¶¶ 18, 26-27, 29-30, 33, 37-39, 41.  All of these courts share an interest in avoiding the disclosure of confidential complaints.  If there were a "'substantial probability'" that on-receipt access would impair this interest, evidence of actual harm to confidentiality interests would have come to light by now.  *See* MSJ at 31-32.  The F&R ignore entirely that Defendant's numerous phone calls and e-mails to court clerks in other states failed to substantiate administrators' concerns about on-receipt access.

OBJECTIONS OF PLAINTIFF COURTHOUSE NEWS SERVICE TO FINDINGS AND RECOMMENDATIONS - 16

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

2.      **The F&R Improperly Relied on Defendant's Generalized and Conclusory Assertions About Confidentiality in Oregon Civil Court Records**

The reason that on-receipt access to e-filed civil complaints has not caused issues with confidential filings in other courts is that automatic segregation of confidential filings is highly effective, as Defendant's own records show.  As in other court systems, civil filings in Oregon very rarely present confidentiality issues.  Defendant's papers obscure this fact by making vague references to "reviewing for confidential information," as if circuit court clerks are charged with scouring complaints for information that the clerks might deem "confidential."  The following review of relevant law and rules is offered to help demystify how confidential filings work in Oregon.

The governing Standards do not permit Oregon circuit clerks to reject filings based on some free-floating "confidentiality" basis.  The presumption in Oregon – as in other states – is that civil court records are open to the public, subject to two narrow exceptions.  *See, e.g., Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016); MSJ at 23.  *First*, a case type or document type might be confidential by rule or law.  ***No civil case type in Oregon is confidential by rule or law***.  Dupree Decl., ¶ 5 & Exh. 2.  Nor are civil complaint document types confidential by rule or law.  *Id*., ¶ 7 & Exh. 3.  *Second*, a civil document might be sealed by court order upon a motion pursuant to UTCR 5.160, but both the motion and the document proposed for sealing must be filed at the courthouse in paper.  They may not be e-filed.  UTCR 21.070(3)(g).

Oregon allows filers to request the segregation of discrete "protected personal information," but – as in virtually every other court system, including the federal courts – it is up

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 17

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

to the filer, not court clerks, to either omit information like social security numbers from filings or to affirmatively request confidential handling. UTCR 2.100(1)(a); *see also, e.g.*, F. Rule Civ. P.. 5.2. In Oregon, protected personal information consists of "specific individual facts," other than a person's name, that would identify that person or their financial activities and that the court is otherwise "allowed or required by law to keep confidential." UTCR 2.100(2)(a). Protected personal information does not encompass "entire documents." UTCR 2.100 (2)(c). The court has no obligation to look for or segregate personal information absent a specific request made under UTCR 2.100. *See also Planet III*, 947 F.3d at 597 (California's rule "requir[ing] the filer – not the court – to exclude or redact private information from publicly filed judicial documents" as one basis for rejecting confidentiality justification for defendant's no-access-before-processing policy).

The governing standards do ***not*** permit clerks to reject e-filed complaints based on the clerk's view that the filer should consider requesting segregation of protected personal information contained in the complaint. Declaration of Nancy Cozine ("Cozine Decl."), Exhs. 3-4 (ECF 58-3, 58-4).[8] Rather, the only confidentiality-implicating bases on which a clerk may reject an e-filed document are that (1) the filer combined a confidential and non-confidential document into a single .pdf (Cozine Decl., Exh. 4 (Reason 2(k)); (2) the filer selected the wrong case type from the e-filing interface (*id.*, Reason 1(b)); or (3) the filer selected the wrong filing

---

[8] To the extent Oregon circuit court clerks take it upon themselves to identify information that they believe should not have been included in civil court filings, such action is gratuitous and cannot form the basis of a restriction on the First Amendment access right. In any event, Defendant's own records reflect that this almost never happens in Oregon civil court filings. *See* Keating Decl., ¶ 32 & Exh. 9.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 18

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

code (aka document type) from the e-filing interface (*id.*, Reason 1(c)).  *See* Cozine Decl., ¶ 13.

Thus, the clerk's job is ***not*** to read through e-filed documents for "confidential

information" but rather to check that the case and document type the filer selected matches the

documents filed.[9]  Defendants vaguely worded references to Oregon clerks being "required to

review electronically submitted civil complaints for improperly filed confidential information" is

thus misleading.  Declaration of Elizabeth Rambo ("Rambo Decl."), ¶ 9 (ECF 62); Declaration

of Barbara Marcille ("Marcille Decl."), ¶ 9 (ECF 63); Declaration of Amy Bonkosky

("Bonkosky Decl."), ¶ 10 (ECF 64).

After Defendant testified that her office had "looked into user error" by "look[ing] at our

own records, our own rejection records," which she said showed that "it's not uncommon for

domestic relations filings to be submitted as civil filings."  Fetterly Decl., Exh. 1 (Cozine Depo.

86:2-87:3), Courthouse News analyzed this data for itself.  Defendant's rejection records flatly

contradicted Defendant's assertions, showing instead that automatic filtering is extremely

effective at using filer-entered information to segregate confidential filings from the public

record.  The records reflect that clerk processing resulted in, at most, rejection of ***0.018%*** of civil

complaints e-filed from January 2019 to April 2022 for reasons related to confidentiality.

Keating Decl., ¶¶ 17, 23(a), (c), (e), 27, 31-32, 34-35 & Exhs. 4-7, 9; *see* MSJ at 25-26.  In other

words, Defendant's practice effectively sealed ***99.98%*** of all civil complaints (more than

144,000) pending clerk review in order to identify the 0.018% (26 complaints) that might have

---

[9] The combination of a confidential and non-confidential document in a single .pdf is a variation
of selecting the wrong document type.  If the confidential document is filed separately, with the
correct document type, security will be applied automatically.  *See* Fetterly Decl., Exh. 1 (Cozine
Depo. 37:1-7, 50:3-14).

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 19

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

implicated confidentiality.

Confronted with the reality that – contrary to Defendant's 30(b)(6) testimony – rejection records reflected that automatic filtering based on filers' selections in the e-filing interface would have protected confidentiality at least 99.98% of the time, Defendant was forced to resort to vague and conclusory assertions by three court administrators. *See* MSJ Response at 24; Rambo Decl., ¶¶ 8, 12; Marcille Decl., ¶¶ 8, 12; Bonkosky Decl., ¶¶ 9, 13. The relevant assertions, which are repeated practically verbatim in each declaration, are not sufficient to meet Defendant's burden even if the court treats the assertions as true. For example, each administrator states that "it has been the experience at the [administrator's local circuit court] that filers regularly make mistakes and fail to designate confidential information as required by the UTCRs." Rambo Decl., ¶ 8; Marcille Decl., ¶ 8; Bonkoski Decl., ¶ 9.

Setting aside the lack of foundation for the assertion that "it has been the experience of the [court]," the word "regularly" does not provide any meaningful information about frequency or volume, and the administrators do not say that these supposed failures to designate confidential information happened as part of ***civil case-initiating*** filings (vs. subsequent filings in civil cases or filings in family, juvenile dependency, or probate/mental health cases). *See* MSJ Reply at 17-20. The same is true for the assertion that an "ongoing issue is that filers fail to designate confidential documents as confidential in File & Serve" and that "mistakes such as not designating a document as confidential can be and are regularly corrected by staff" without leaving a record of such corrections. Rambo Decl., ¶¶ 8, 12; Marcille Decl., ¶¶ 8, 12; Bonkoski Decl., ¶¶ 9, 13. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 20

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

conclusory allegations unsupported by factual data to create an issue of material fact.").

If these administrators could have provided meaningful evidence showing that, on a regular basis, e-filers mistakenly identify their confidential documents as civil complaints such that the documents would not be automatically segregated from the public record, the administrators presumably would have done so.  It is not surprising that they could not, given the implausibility that a filer would, for example, select "Civil" for case category, "Contract" for case type," and "Complaint - CM" for document type instead of selecting "Family" for case category, "Adoption" for case type, and "ASSIS Exhibit – Home Study – ASHS" for document type.  Fetterly Decl., Exhs, 12, 14.

The Court cannot reasonably infer from the evidence presented that such mistakes happen with such regularity as to demonstrate a substantial probability that the interest in protecting confidential documents would be impaired without the practice of withholding all civil complaints for clerk review.  *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Boardman v. Inslee*, 354 F. Supp. 3d 1232, 1239 (W.D. Wash. 2019) ("Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.").

Instead of drawing the only reasonable conclusion – that Defendant failed to meet her burden on the first prong of the test – the F&R somehow concluded that the first prong was satisfied.  This application effectively eliminates the "substantial probability" element from the test altogether and engages in the very weighing of interests "in the abstract" that the *Press-Enterprise II* test is meant to guard against.  478 U.S. at 7.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 21

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**3.    Key F&R Conclusions as to Risks Supposedly Posed by On-Receipt Access Are Based on Factual Errors**

The conclusion that Defendant satisfied her burden on the first prong of *Press-Enterprise II* is manifestly unreasonable even if it were not based on factual errors.  Nevertheless, several erroneous factual findings appear to have weighed heavily in Judge You's analysis, and Courthouse News objects to each of them.

- *"[P]laintiff identified only 26 complaints or 0.18 percent, that were rejected for a reason related to confidentiality."*  F&R at 6-7.

First, the correct percentage is 0.**0**18%, not 0.18%, as the Findings & Recommendations mistakenly concluded.  F&R at 6-7.  26 divided by 144,244 = 0.00018, or 0.018 % – less than two hundredths of one percent.  *See* MSJ at 25-26.  Second, even this tiny number over-counts the actual number of complaints rejected for reasons related to confidentiality.  As explained below, there is reason to doubt that many of the filings that were included in this total should, in fact, have been rejected.  This is why Courthouse News' motion stated that "Defendant's records show that ***at most***, clerk review resulted in confidential handling for 26 filings (0.018%, less than two hundredths of one percent) over the course of more than three years."  MSJ at 26.

- *"8 complaints were rejected because they were improperly filed as a nonconfidential civil case and should have been filed as a family or domestic, including at least two petitions for a stalking protective order."*  F&R at 7.

While eight complaints appear to have been rejected because the clerk thought they should have been filed in a non-civil case category, it is not clear from the record that ***any*** of them should have been kept confidential.  For three of them, the clerk's initial assessment that a non-civil case category was appropriate seems to have been mistaken.  Keating Decl., ¶¶ 23(a), 35(a), 35(b) & Exhs. 6, 11.  Two of them evidently should have been filed in the probate case

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

category, but there is no indication that they were for civil commitment cases, which is the only

confidential case type available for e-filing within the probate category.  Keating Decl., ¶¶ 23(b),

23(d); Dupree Decl., Exh. 2.

Three of the entries correspond to two different petitions for stalking protective orders

(one of which was submitted twice).  Keating Decl., ¶¶ 23(c), 23(e), 27.  ***Stalking petitions are***

***not confidential***.  Judge You's finding that withholding complaints for processing prevented the

"inadvertent disclosure of … the address of a domestic violence victim," F&R at 8, is factually

wrong.  Contrary to what the F&R suppose, stalking petitions are not kept secret from the alleged

stalker.  Rather, the petitioner must serve a copy of the petition on the alleged stalker.  *See*

Request for Judicial Notice ("RJN"), Exh. 2 (Oregon's civil stalking forms, available at

https://www.courts.oregon.gov/programs/family/domestic-violence/Pages/stalking.aspx).  The

form's instructions explicitly state:

> You must give the court a contact mailing address and phone number where the
> court and sheriff can reach you. …. ***This information will be public and the***
> ***respondent will also see it.***  You do NOT have to use your residential address or
> phone number.  If you don't want the respondent to know where you live or have
> your phone number, you can use a safe contact address and contact phone
> number.

*Id*. at 2.

The only possible relevance stalking petitions have in this case is that Oregon makes

them available only at the courthouse and not through its subscription-based remote access

platform, OJCIN, in light of a provision in the federal VAWA statute prohibiting states from

making certain protective order petitions "available publicly on the Internet."  18 U.S.C.

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 23

2265(d)(3); Dupree Decl., ¶ 5.[10]   Though the F&R acknowledge this point in a footnote, F&R at 8 n.18, the mistaken belief that clerk review helped keep "the address of a domestic violence victim" secret was an important component of the F&R's conclusion that "devastating and long-lasting consequences on a litigant's or third party's safety, privacy, or economic interests" are at stake.  F&R at 8; *see also* F&R at 15 (noting "the potentially serious and long-lasting harm that defendant's current system prevents").  In reality, Defendant has offered ***no*** evidence that withholding e-filed civil complaints for clerk processing protects against "serious and long-lasting harm."

- *Defendant's evidence reflects an "instance where a filer attempted to file a civil case that should have been filed as [a] confidential juvenile case."*  F&R at 7.

Again, an analysis that hinges on one complaint out of more than 100,000 is already flawed beyond repair.  Given the weight the F&R assign to this mistaken factual finding, however, Courthouse News must correct the record.  Closer examination reveals that the filing at issue was ***not*** intended for filing as a confidential juvenile case.  The example is one of ***clerk mistake*** rather than filer mistake.

On November 25, 2020, a filer e-filed a document in Washington County Circuit Court, selecting "Civil" for case category, "Review – Government Actions" for case type, and "Petition

---

[10] While Defendant does have an interest in complying with federal law, F&R at 8 n.18, evidence that two out of 144,244 filings from January 2019 to April 2022 would have been temporarily available through OJCIN comes nowhere close to establishing a substantial probability that the interest in complying with federal law would be impaired by on-receipt access.  Moreover, Defendant could serve this interest through measures that don't implicate the First Amendment, such as limiting on-receipt access to documents filed by attorneys (who are less likely than self-represented litigants to make mistakes in e-filing interface selections) and/or including a warning on the e-filing interface reminding e-filers of the case category ("family") and case type ("protective order – stalking") for stalking petitions.  *See* Section II.C, *infra*.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

– Judicial Review – PTJF" for filing code description (aka document type).  On the morning of

November 27, "court staff rejected [it,] indicat[ing] that it should be submitted to the court's

juvenile department."  Dupree Decl., ¶ 30 & Exh. 17.

Later that afternoon, the petition for judicial review was re-filed, again in the civil case

category, "Review – Government Actions" case type, and "Petition – Judicial Review – PTJF"

filing code description.  *See* Dupree Decl., Exh. 6 (search native spreadsheet for envelope ID

6379741 or Case No. 20CV42272).  This time, the petition was accepted as a non-confidential

document and became Case No. 20CV42272, *Gonzalo Calderon vs. Oregon Dep't of Human*

*Serv*.  *See id*.; RJN, Exh. 1.  The document at issue was not a confidential juvenile document but

rather a non-confidential petition for judicial review of an administrative order.  *Id*.  Petitions for

judicial review are not among case-initiating documents that can be e-filed in juvenile cases.

Fetterly Decl., Exh. 14 at 23-24.

The administrative order is related to a finding of child abuse, which is presumably what

confused the clerk into thinking it should have been a confidential juvenile filing.  RJN, Exh. 1.

But the document does *not*, as the Findings and Recommendations assume, contain "the name of

a minor child who was subjected to abuse."  F&R at 8; RJN, Exh. 1  The record reflects *no*

instances in which a confidential juvenile filing would have been released to the public absent

clerk review.  Again, there is *no* evidence that withholding for processing prevents "devastating

and long-lasting consequences."  F&R at 8.

- *"9 complaints were rejected for combining confidential and nonconfidential documents into a single document for filing."*  F&R at 7.

While nine complaints were rejected with the rejection code corresponding to the

combination of confidential and non-confidential documents, the rejection comments for two of

them reflect that they were rejected for reasons unrelated to confidentiality, and the rejection comments for three others do not reference confidentiality. Keating Decl., ¶ 19 & Exh. 4.

- *Defendant's evidence reflects that "human review led to the suspension of one filer who was attempting to use the court's e-filing system to make violent threats against an individual, including publishing a personal address." F&R at 7.*

It might be that clerk processing evidently led to the suspension of a litigant who had e-filed documents with bizarre content, Cozine Decl., ¶ 10 & Exh. 2, but it is not true that the practice of **withholding access** for clerk processing led to the suspension. Rejection of the document might have been appropriate for non-compliance with various court rules, but the document is not confidential, and no public interest was served by withholding it from the public.[11]  Defendant properly produced the document in discovery without any confidentiality designation and filed an unredacted version of the document in the public record in this case. Cozine Decl., Exh. 2 (ECF 58-2).  Contrary to the F&R's assertion, this document – which is Defendant's only support for the misguided notion that withholding for clerk processing prevents filers from maliciously including confidential information in civil filings, MSJ Response at 7 – does not help Defendant.

These factual errors reflect the extent to which the F&R adopt Defendant's vague and conclusory assertions rather than subjecting them to the rigorous, fact-intensive scrutiny that *Press-Enterprise II* requires.  To carry her burden, Defendant needed to make specific factual showings, not speculate about harm, invoking interests "in the abstract." *Press-Enterprise II*,

---

[11] Inclusion of information that might have been eligible for segregation as protected personal information under UTCR 2.100 is not a basis for rejecting e-filed documents. Cozine Decl., Exh. 4.  Moreover, contrary to what the F&R imply, the address that appears in this filing would not qualify as protected personal information because it is not linked to any particular person. Cozine Decl., Exh. 2; UTCR 2.100(2)(a).

OBJECTIONS OF PLAINTIFF COURTHOUSE NEWS SERVICE TO FINDINGS AND RECOMMENDATIONS - 26

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

478 U.S. at 7.  She did not demonstrate a substantial probability that confidentiality interests would be impaired absent the policy of withholding complaints for processing, and the policy cannot stand.

### C.    The F&R Erred By Not Applying the Critical Second Prong of the *Press-Enterprise II* Test, *i.e.*, Defendant's Burden of Demonstrating No Reasonable Alternatives

The legal and factual errors discussed above culminated with Judge You effectively relieving Defendant of her burden of demonstrating, under the second prong of the *Press-Enterprise II* test, "that no reasonable alternatives exist to 'adequately protect' [her asserted] government interest." *Planet III*, 947 F.3d at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14).

Page 9 of the F&R begins by recognizing that "[t]he second step of the [*Press-Enterprise II*] balancing test asks whether there is any reasonably available alternative that could 'adequately protect [the asserted] governmental interest.'"  F&R at 9 (quoting *Planet III*).[12] However, *the F&Rs do not answer that critical question*.  Instead, based on a mis-reading of *Planet III,* they categorically dismiss the press queue as an alternative without considering it. *See* F&R, 9-14; *see also* Sections I, I.A, *supra*.  The failure to require Defendant to demonstrate that reasonable alternatives do not exist is fatal to the F&R analysis.

When the Court conducts its de novo review of the motion for summary judgment, the undisputed record will demonstrate at least three different alternatives to Defendant's current practice of restricting access to new e-filed complaints until after the completion of processing:

---

[12] The F&R's framing of this prong as "ask[ing] whether there is any reasonably available alternative" deviates from *Planet III*, which states "[defendant] must demonstrate… that no reasonable alternatives exist."  947 F.3d at 596.  This distinction, while seemingly trivial, is significant because *Planet III* expressly recognizes the defendant's burden, whereas the F&R's framing does not.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

(1) a press review queue hosted by Tyler that allows credentialed users to view complaints as they are submitted to the court via a designated and secure web page even though they have not yet been processed and "accepted" by court staff; (2) a press review queue hosted and maintained by Defendant using Tyler's application programing interfaces (API); and (3) an auto-accept system, like that used by the federal district courts, that automatically "accepts" complaints and makes them available to the public moments after they are filed. *See, e.g.,* MSJ at 5-7, 10-14, 31-32; Girdner Decl. ¶¶ 10-56, Exs. 3-15; Fetterly Decl., Exhs. 1 (99:6-12), 6 (RFAs 14-17), 10 and 20 at 2, 4, 5, 7, 24-25, 28, 29).

Despite the availability and efficacy of the press review queue and auto-accept alternatives, *see id.*, Defendant nevertheless maintains her practice of sealing ***all*** non-confidential civil complaints until after the completion of clerk processing, thus burdening the First Amendment right of access ***100% of the time*** even though the record shows filers made mistakes potentially implicating confidentiality at most only ***~0.018% of the time*** over a period of more than three years, with many of the 26 filings comprising that miniscule fraction not actually implicating confidentiality concerns at all.  *See* § II.B.2-3, *infra*.  Defendant's no-access-before-process policy thus unnecessarily overburdens the First Amendment and is not narrowly tailored under any application of the *Press-Enterprise II* test.  *Cf. Index Newspapers LLC v United States Marshals Serv.*, 977 F.3d 817, 832-33 (9th Cir.2020) (general dispersal order was not narrowly tailored to serve the government's interest in defending federal property where it applied broadly to all members of the press and public rather than being tailored to violent protestors).

Both the press review queue and auto-accept alternatives avoid burdening the First Amendment by making non-confidential civil complaints available to the press and public while

court clerks complete their administrative and clerical tasks.  If Defendant wanted to take additional steps tailored towards avoiding filer mistakes involving confidentiality without sealing *every* non-confidential civil complaint pending completion of processing, she could easily do so. For instance, Defendant could require e-filers to select "confidential" or "public" from the e-filing interface instead of allowing them to bypass the selection, as in the current interface configuration. Fetterly Decl., Exh. 12 at 12, Exh. 5 (RFAs 7 & 8).  Defendant could also post warnings on the e-filing interface to clarify what case category, case type, and document type selections should be made for particularly sensitive filings.  *See* Fetterly Decl., Exh. 12.  She could require filers to check a box in the e-filing interface confirming that social security numbers and financial account numbers have been redacted, which is what the federal courts require.  *See id*.  She could also limit pre-processing access to only attorney-filed complaints, excluding pro se filings, and require the press and public to register for pre-processing access in the same way Defendant currently requires registration for post-processing access through OJCIN.  *See* Girdner Decl., ¶ 57, Exh. 16 (OJCIN Terms of Use).

Any one of these options— which are ***not*** mutually-exclusive—would more narrowly target Defendant's stated concerns about protecting confidential filings than her current post-submission review process.  *See* Cozine Decl. (ECF 14), ¶ 6 (identifying numerous things clerks review documents for during post-submission review, including "confidentiality" and numerous other clerical matters unrelated to confidentiality); *see also Cozine*, 2022 WL 10000775, at *2 (comparing Defendant's "after-submission review process" with the "seven-step acceptance and quality control review" process that was enjoined in *Planet III*).  Defendant instead maintains her current practice of sealing *all* non-confidential civil complaints pending completion of

OBJECTIONS OF PLAINTIFF COURTHOUSE
NEWS SERVICE TO FINDINGS AND
RECOMMENDATIONS - 29

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

administrative processing.  This practice overly burdens the First Amendment without

justification and cannot survive *Press-Enterprise II* scrutiny.

## CONCLUSION

The fatally flawed F&R turn *Press-Enterprise II* on its head, relieving Defendant of her

constitutional burden to justify her policy and practice of withholding all non-confidential e-filed

civil complaints until after administrative processing.  The F&R cannot be squared with the

record or governing law and cannot stand.  For the foregoing reasons, Courthouse News

respectfully requests that the Court conduct a de novo review and grant the motion for summary

judgment.

Dated: April 27, 2023

HILLIS CLARK MARTIN & PETERSON P.S.

By      *s/ Eric D. Lansverk*
         Eric D. Lansverk, OSB #144700
         999 Third Avenue, Suite 4600
         Seattle, Washington 98104
         Telephone: (206) 623-1745
         Facsimile: (206) 623-7789
         eric.lansverk@hcmp.com

BRYAN CAVE LEIGHTON PAISNER LLP

By      *s/ Katherine Keating*
         Katherine Keating (admitted *pro hac vice*)
         3 Embarcadero Center, 7th Floor
         San Francisco, CA 94111
         Telephone: 415-675-3400
         katherine.keating@bclplaw.com

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE