IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, Plaintiff, | ) | 3:21-cv-00680-YY |
| vs. | ) | September 12, 2023 |
| NANCY COZINE, in her official capacity as Oregon State Court Administrator, Defendant. | ) | Portland, Oregon |

(Motion Hearing)

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL H. SIMON

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

FOR THE PLAINTIFF: Jonathan G. Fetterly
Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, Suite 2500
San Francisco, CA 94015

Katherine Keating
Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94015

Eric D. Lansverk
Hillis Clark Martin & Peterson
999 Third Avenue, Suite 4600
Seattle, WA 98104

FOR THE DEFENDANT: Carla Scott
Christine Beatty-Walters
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

COURT REPORTER: Dennis W. Apodaca, RDR, FCRR, CRR
United States District Courthouse
1000 SW Third Avenue, Room 301
Portland, OR 97204
(503) 326-8182

INDEX

Motion hearing 4

(September 12, 2023)

P R O C E E D I N G S

(Open court:)

THE COURT: Mary, please call the case.

THE CLERK: Your Honor, we are here in the matter of Courthouse News Service v. Cozine. Case No. 3:21-cv-680-YY. I would like to invite counsel for plaintiff to enter your appearance for the record.

MR. FETTERLY: Good afternoon, Your Honor.

Jonathan Fetterly for the plaintiff, Courthouse News Service.

THE COURT: Good afternoon.

MR. FETTERLY: With me at counsel table is Kathleen Keating. We are both with Bryan Cave Leighton Paisner. Also with us is Mr. William Girdner of Courthouse News Service. And with us in the courtroom is Eric Lansverk with Hillis Clark Martin & Peterson.

THE COURT: Good afternoon to you all.

MS. SCOTT: Good afternoon, Your Honor.

Carla Scott for defendants.

MS. BEATTY-WALTERS: Good afternoon, Your Honor.

Christina Beatty-Walters for Defendant State Court Administrator.

THE COURT: Good afternoon.

We are here on the plaintiff's objections to

Magistrate Judge You's findings and recommendations. That's Docket 89. I have read the findings and recommendations. I have read the objections and responses. I know about the request for judicial notice.

Let me tell you what my current questions and concerns are, and I'm looking quite closely at the Ninth Circuit's decision in Courthouse News Service v. Planet. That's the Ninth Circuit decision from 2020 that I know a number of people refer to as Planet III.

On the one hand, I see on page 585 of that decision, the Ninth Circuit writes that even though the press has a right of timely access to newly filed civil nonconfidential complaints, and that attaches when the complaint is filed, the Ninth Circuit adds, "However, this right does not entitle the press to immediate access to those complaints."

They also reiterated that nine pages later on page 594. They say, "We do not view that conclusion as demanding immediate pre-processing access to newly filed complaints."

Then they say a little bit later in that page that they arrive at the question that lies at the core of this dispute, "What amount of delay in making newly filed complaints publicly available is constitutionally justified?"

Then they give us their two-prong balancing test. And that's what I view as the key to the Planet III case and key to the problem before us in this argument.

On page 596, the Ninth Circuit writes: "To survive Press-Enterprise II's two-prong balancing test, Ventura County must demonstrate, first, that there is a substantial probability that its interests in the fair and orderly administration of justice would be impaired by immediate access; and second, that no reasonable alternatives exist to adequately protect that governmental interest."

The first thing that I glean from that is that the burden is on the defendant to demonstrate those two prongs, and that's not the way -- at least the way I read it, that's not the way Judge You approached the problem. I think she viewed the problem as something that Courthouse News needed to demonstrate, although it was Courthouse News' motion for summary judgment that was before her, that may or may not make a difference here.

But I would like to dive right into the merits and ask the defendants really about the two prongs in Planet III. Let's spend more time on the second prong. But could you briefly identify for me what is the evidence of the substantial probability that defendant's interest in the fair and orderly administration of justice would be impaired

by immediate access.

Let's sort of cut to the chase a little bit. I get that there is concern about inadvertent disclosure of confidential information. I get that. We will talk about that maybe in a few moments.

Is there anything else besides that for the first prong?

MS. BEATTY-WALTERS: Your Honor, I think the evidence is that it's primarily that. I think there are other interests as well -- just the integrity of the court record; making sure that court rules are complied with. I think the Court needs some time -- and I think what the Ninth Circuit is saying here by stating twice, as you have noted, that the plaintiffs are not entitled to immediate access under the First Amendment, I think what the Court is saying there is that there is some daylight. There is something between immediate access, right, and what's unreasonable.

THE COURT: Right. And the way to measure whether the daylight is constitutionally sufficient or insufficient is to look to this two-prong test, right?

MS. BEATTY-WALTERS: Correct.

THE COURT: Okay. So obviously we have to have some respect for court rules and for requirements, but why can't that be satisfied simply by saying, "We're going to

give pre-review access" -- we will talk about the confidential stuff later. We can satisfy the court rules by saying, "We are going to give pre-review access to the public. But by the way, folks, if you haven't paid your filing fee, if you haven't done this or that under our rules, your complaint will be kicked out."

Okay. That gives adequate respect for the courts' requirements and the processes, putting aside confidentiality, and that doesn't interfere with pre-review access by the courts. Because if someone doesn't pay the filing fee or has filed in the wrong court -- again, putting aside confidential stuff -- fine, then they won't get to get their day in court if they don't pay their filing fee or otherwise be exempt.

Why is that something that should be considered -- the filing fee and things like that -- something that should be considered on this first prong of Planet III?

MS. BEATTY-WALTERS: On the first prong?

THE COURT: Yes.

MS. BEATTY-WALTERS: Well, I think it is not just the confidentiality. It's also that courts have an interest in ensuring that people out there in the public don't use the court system as a cudgel, for example, to do things that wouldn't be illegal in any other scenario.

THE COURT: Like what?

MS. BEATTY-WALTERS: Like defaming someone.

THE COURT: Are your clerks really going to strike or reject a complaint, when the filing fee is paid for, just because the complaint has allowed stuff that is allegedly defamatory?

MS. BEATTY-WALTERS: It would have to be, I think -- there isn't any evidence in the record on that, to be clear.

THE COURT: No.

MS. BEATTY-WALTERS: There is nothing in the record on that.

But there is one example of a situation where a person was clearly misusing the court, and that is the kind of thing that raises a red flag.

THE COURT: Misusing the courts in what way and how would giving plaintiff or a news agency pre-review access interfere with that?

MS. BEATTY-WALTERS: Well, once the information is filed with the court or submitted to the court and before it is accepted, once it goes out, it is out. The court system has no control over it anymore.

THE COURT: Right.

MS. BEATTY-WALTERS: It is public. So there isn't any way that the court can satisfy its interest.

THE COURT: Sure. If you are misusing the court,

then, fine, then you reject the complaint, and they won't get their day in court. That's one way to solve the problem. Again, we're putting aside confidentiality issues. What's the big deal there?

MS. BEATTY-WALTERS: Right.

THE COURT: I'm missing it.

MS. BEATTY-WALTERS: There is also federal law that the courts need to comply with, including the Violence Against Women Act, and so the Court cannot allow or put up on the Internet information that would be in violation of that. So they do need to make sure that they are complying with that federal law.

THE COURT: So what exactly does that federal law require or prohibit?

MS. SCOTT: Your Honor, my understanding is that law prohibits the posting online of Violence Against Women Act petitions -- full stop, period -- even if that information is required to be made available to the alleged abuser.

THE COURT: Let me rewind you a little bit. What precisely does the federal law prohibit a state court system from making available online?

MS. SCOTT: Petitions under the Violence Against Women Act; domestic abuse petitions is my understanding.

THE COURT: Okay. Why isn't that problem solved

by simply saying, okay, petitions for domestic violence will not be subject to pre-review access, immediate access?

MS. SCOTT: I think the answer to that question is we won't be able to determine whether a petition has been filed under the Violence Against Women Act without human review, because filers are often, in those situations, pro se litigants, and they can file a petition under that federal law in the wrong case type. And if the clerk doesn't do the human review, they cannot ensure compliance with that federal law.

THE COURT: Okay. So let me broaden my question. Why not exempt from immediate access or pre-review filings anything filed pro se? Frankly, the plaintiff says they will go along with it. They say on page 29 of their objections that Ms. Cozine "could also limit pre-possessing access to only attorney-filed complaints, excluding pro se filings, and require the press and public to register for pre-processing access in the same way defendant currently requires registration for post-processing access through the OJCIN."

So why isn't that a more narrowly tailored solution to this problem? Of course, we don't want to have the state courts violate federal law. All right. So nothing pro se will be filed.

In addition, you will make a real clear statement

that says, "Lawyers, if this is a petition for domestic violence, click this box." Then that will not be immediately accessible without further review.

Why aren't these -- and now I know I'm shifting a little bit into the second prong -- but why aren't these reasonably narrowly tailored alternatives to accomplish the State's interest?

MS. SCOTT: I think the answer is that not all Violence Against Women Act petitions are filed pro se, No. 1. And No. 2, although it is important to concede that lawyers will comply with their duties and file it properly, we all know that lawyers make mistakes. I have made filing mistakes and filed something not under seal in federal court that needs to be filed under seal. So lawyers are not perfect. And so that is why that is not --

THE COURT: Neither are human reviewers, right?

MS. SCOTT: That's true. But I think the Planet III decision gives us a chance to protect that important state interest.

THE COURT: Not if there is not more reasonably narrowed tailored alternatives.

For example, one is you take right off the table all pro se filings. Secondly, as the plaintiffs suggest on page 29, you add, if it is a lawyer filing, "You have to check this box. Does this complaint in any way involve

domestic violence or allegations of domestic violence such that it can be considered a petition for domestic violence? Is there any confidential information? Check this box to confirm that you have redacted all information that needs to be redacted," things like that.

Why aren't these more reasonably narrowed alternatives?

MS. BEATTY-WALTERS: Your Honor, the answer is those checks are already in place.

THE COURT: Good.

MS. BEATTY-WALTERS: The UTCRs require that attorneys do those things and still --

THE COURT: Good. Wait a second. Let me make sure I'm understanding you. I know that the UTCRs require attorneys to do that. Does the electronic filing affirmatively require the filer to click the box that says, "There are no allegations of domestic violence or domestic abuse in what I'm filing?" Click another box. "There are no Social Security numbers in this filing."

Do they have to do that?

MS. BEATTY-WALTERS: I don't think that's in the record, Your Honor.

THE COURT: Do you know the answer, by the way?

MS. BEATTY-WALTERS: I don't. Sorry.

THE COURT: I know that it can be done, right.

Why isn't that a more narrowly tailored approach to solving this problem?

MS. BEATTY-WALTERS: Well, I still think in light of the fact that there already is an existing requirement to review for those things -- and I believe there is something; I couldn't recite to the Court right now -- that tells people what the requirements are as they go through filings, mistakes will still be made, Your Honor.

THE COURT: It's one thing to tell people what you require for filing -- don't do this and don't do that. It is another thing to make them affirmatively check a box electronically, but to check a box that says, "I confirm that there is no Social Security numbers; no addresses of domestic violence victims," things like that.

By the way, I'm already, from this analysis, excluding pro se filings. They may or may not be able to follow those check boxes. But when I saw plaintiff's concession on page 29, I'm taking pro se filings off the table.

For those things that are filed by lawyers and/or lawyers' assistants, if we say, "Check these boxes before you can file this," and if they check those boxes, and if then pre-review access is immediately available, at least to folks who have pre-registered for pre-processing access, doesn't that go a long way towards reducing these problems

so that we don't have a substantial probability of violations?

Frankly, I think it would be a better and less probability of violations than just allowing human access, and that way we accomplish the First Amendment objectives as well as the State's legitimate objectives, and I think that's what the First Amendment requires, as I read Planet III.

MS. BEATTY-WALTERS: Well, Your Honor, first of all, I do not want to concede that's what is already happening right now, because we don't have the record developed on that point. So it may, in fact, be what's already happening --

THE COURT: Okay.

MS. BEATTY-WALTERS: -- for the first thing.

But secondly, I think if this Court were to hold, as the Court just suggested, that this Court would be going further than Planet III did. In Planet III, there were two policies at issue, right. The second one was a scanning policy. Under that scanning policy -- so this was decided on cross-motions for summary judgment. Under the scanning policy, Courthouse News' argument was that the evidence showed that up to 50 percent or more of cases weren't released -- complaints weren't released until at least the next day, and they argued that was a violation. The

Ninth Circuit said it was not and upheld the Ventura County scanning policy under the First Amendment.

I think what we are asking for here, what the State Court Administrator is asking for here, is something very similar.

THE COURT: Well, if we look at this as a quintessential opposition to their motion for summary judgment, do you agree with me that because of the two-prong test of Planet III, the burden is on the defendant to show a genuine issue of material fact?

MS. BEATTY-WALTERS: Yes. We agree with that.

THE COURT: So I think Judge You got that one slightly wrong.

Now, tell me what are the genuine issues of disputed fact -- and by the way, I'm assuming this will be a bench trial, not a jury trial, since they're only seeking injunctive and declaratory relief.

What issues of disputed fact would I need to decide at a bench trial?

MS. BEATTY-WALTERS: Well, Your Honor, we did not move for summary judgment.

THE COURT: Well, you did, but Judge You denied. They moved it. You're saying, "No, you shouldn't have summary judgment." You're saying -- I'm sorry for interrupting, but I want to drive us to the point.

MS. BEATTY-WALTERS: Sure.

THE COURT: They moved for summary judgment, and you're saying, "No, you are not entitled to summary judgment; there is a disputed issue of material fact here."

MS. BEATTY-WALTERS: Right.

THE COURT: All I'm asking you to tell me with specificity, what are the disputed issues of material fact that you, as the opponent of summary judgment, contend exist?

MS. BEATTY-WALTERS: Well, I think it's an issue of material fact -- whether it's disputed is a question that I'm not sure about.

THE COURT: Okay.

MS. BEATTY-WALTERS: I think it's an issue of material fact that there are quite a number of corrections that are made by trial court administrators to improperly filed documents; that there are errors made and confidential information is improperly filed that trial court administrators correct.

THE COURT: I don't think that's in dispute, if I read this correctly. Trial court administrators are doing an excellent job. They are moving very rapidly. By the way, I'm really impressed with the July 13th, 2022, change in policy. That's wonderful. But plaintiffs are claiming that's still not good enough under Planet III. And

Planet III, whether they're right or whether they're wrong -- and that's not my department -- says to decide whether a plaintiff making this argument is right or wrong, I have to find the two prongs.

So I need to know what are the facts in dispute on those two prongs. And if there are no facts in dispute on those two prongs, I need to decide one way or the other on summary judgment, effectively an implicit cross-motion for summary judgment if there is nothing in dispute. And I just want to find out exactly if you say that there are no reasonable alternatives to what you're doing -- and I kind of get it is really hard to prove a negative. I get that. But they've come forward and said, "Well, here are a couple of alternatives that you could do." It is mostly on page 29 of their objections.

And if you say, which you didn't, because I read your response -- if you said, "We are already doing that; too bad," that's one issue that might be in dispute. But you didn't say that. If you say, "No, we absolutely can't do that; that's impossible," and tell me why. Okay, then that might not be in dispute. But you didn't say either of those things.

So since they've presented some things that they say you could do that would enable you to satisfy prong one of Planet III, I'm looking now to prong two, saying, "Where

is the fact dispute? What am I going to be deciding if we go to a bench trial to decide whether there are or are not reasonably tailored alternatives?" And I didn't see any in the record.

MS. BEATTY-WALTERS: Your Honor, until the objections came, it's my understanding that the only alternative that the plaintiff had put forward is to just immediately provide access.

THE COURT: Correct. And now we saw the objections --

MS. BEATTY-WALTERS: Right.

THE COURT: -- and you had an opportunity to respond to them.

MS. BEATTY-WALTERS: Well, my understanding is the posture of where we are in this case, that the record is closed. We don't have an opportunity --

THE COURT: No, that's not exactly right. You know that on a review of a magistrate judge's decision, a judge has discretion of taking new evidence. You could have given me, or at least offered declarations of some of the folks -- the state court administrator and local county trial administrators to show why these options are not feasible, why they can't be done, or why you are already doing it, and you can't do it anymore, right?

MS. BEATTY-WALTERS: Well, our understanding of

the law, and I think we cited some of these cases in our briefing, is that it's extremely rare -- and the Court does have discretion, of course --

THE COURT: What's extremely rare?

MS. BEATTY-WALTERS: It's rare for the Court to consider late-filed-with-objections material.

THE COURT: Well, it is not really late filed. You even have a great excuse. You could say that they didn't present that to Judge You. "They are now arguing to you right now, District Judge, that here are some plausible, more narrowly tailored alternatives that would solve the problem." That's what they argued on page 29.

You could then say, "Well, since they brought that up, here is the factual evidence for why they're wrong," and we will see if there is a fact dispute. But you didn't do that.

MS. BEATTY-WALTERS: Correct. I would have to go to my client to find out whether we have some evidence on those points.

THE COURT: So what am I supposed to do now on the objections -- I do think that Judge You misapplied the standard. So all I have is her findings and recommendations. I still have the motion before me. I have their motion for summary judgment, where now when I factor in their objections, they're saying, even though it may be

your burden to show that there are no reasonably available alternatives, they say, "And by the way, here are some reasonably available alternatives that would solve your Planet III prong-one problem. You didn't do it. Therefore, you lose on prong two."

What am I supposed to do?

MS. BEATTY-WALTERS: Well, I would be happy to go back to my clients, Your Honor, and determine if there are facts that we would like to submit. But short of that, I think our response is that, as we read Planet III, the Court there, the Ninth Circuit, gave the Ventura County court more deference than what the Court today is suggesting it would grant to the State Court Administrator here.

THE COURT: Yeah. I'm not sure I agree with that. But I do think that the Ninth Circuit did say there's no automatic right to pre-processing access, but you do have to survive the two-prong Press-Enterprise approach. And that's what their argument is about.

Let me ask you this: It's my understanding that 12 states already implement some version of pre-review access that the plaintiff is advocating here, either press queue, auto accept, access on receipt -- some version of that. That's Nevada, California, Georgia, Arizona, New York, Vermont, Utah, Hawaii, Alabama, Connecticut, Washington, and Texas. Why can those states deal with their

need to protect both confidential information and the orderly processing of complaints but Oregon can't?

MS. SCOTT: Your Honor, it's my understanding that many of those states made a policy decision to offer -- to settle the dispute with Courthouse News and made a policy decision under Planet III and weighed the risks of litigation and made a policy decision that was within their purview.

But the State Court Administrator here has made the policy decision to take at least some limited amount of time to do a safety check to protect the public from misfiled confidential information.

THE COURT: Let me ask you this -- and the meaning of the phrase "a policy position" has a number of different meanings. One meaning could be, "Oh, we might not be able to satisfy the two prongs that the Ninth Circuit says we have to satisfy and better settle than fight that one out."

Now, of course, you could always still take Planet III up to the Supreme Court. I don't think the Supreme Court has accepted cert. on any of these issues yet; am I correct?

MS. SCOTT: I believe that's correct.

THE COURT: Including, by the way, the abstention issue. When I first heard about this, having written on the a blank slate, I would have been in the abstention camp. I

have been a minority, it looks like, and certainly the Ninth Circuit has taken that issue away from me -- and so be it.

If I were to deny their motion for summary judgment, we would schedule a bench trial. I'm fine with doing that. But I don't know what I would be looking for in a bench trial, given that Planet III and the Ninth Circuit tells me what the two factors are that I have to look at.

Let me ask you this question. Then I'll let you off the hook for a little bit and ask some questions of the plaintiff.

Do you see any value if I were to ponder these issues further while the State and Courthouse News see if you can discuss a resolution to this that can satisfy everyone, satisfies the test of Planet III, including the two prongs? Do you think that would be worthwhile?

MS. SCOTT: I do, Your Honor. In fact, at the outset of this case, we asked for a settlement conference to discuss a resolution, and plaintiffs declined to participate in a settlement conference. We think that's the appropriate way to talk about these delicate issues in order to preserve all the things that go along with a settlement conference.

THE COURT: Understood. Thank you.

All right. Who speaks for Courthouse News? Mr. Fetterly or Ms. Keating?

MR. FETTERLY: Good afternoon, Your Honor. That would be me.

THE COURT: Mr. Fetterly, the Ninth Circuit does say that the First Amendment doesn't automatically entitle the plaintiff to immediate access to these complaints. I do get the two-prong test that I have to apply, and I take it you that don't disagree with my articulation of that test. If you do, by the way, feel free to clarify it.

But my question for you is if I am uncertain whether I want to resolve this on a record that's not really in a great state -- you know, you made your best arguments on page 29 of your objections. You didn't make those to Judge You, by the way; is that correct?

MR. FETTERLY: That is not correct.

THE COURT: Where did you make those points?

MR. FETTERLY: So the alternatives are addressed in the motion for summary judgment in the Girdner declaration. It lays them out in great detail.

THE COURT: I'm not going to go look through a declaration. Did you put that in your briefing to Judge You, those alternatives that you put out so clearly on page 29?

MR. FETTERLY: Yes. We argued the alternative. If I could take a big step back. There are three primary alternatives that we see in the courts. Your Honor is

correct about the courts across the nation. In fact, that list continues to grow to this date. This is a bit of a stale record --

THE COURT: And depending on how this progresses, we may add another one.

MR. FETTERLY: That is correct.

So that record shows that we have one option. One reasonable alternative is the auto-accept system. And that's effectively what the federal court uses. It is what this court uses. A filer submits a document; it's made available.

THE COURT: I know.

MR. FETTERLY: We also have the press review queue, and there are two versions of that. There's the Tyler hosted, the e-filing vendor.

THE COURT: I know.

MR. FETTERLY: Those are the three alternatives. Those can be configured in different ways.

THE COURT: How do I decide -- if they don't want to go with Tyler-hosted approach, and they tell me it costs $108,000 a year, how do I decide whether it fits into this two-prong balancing? On the one hand, it is a very small amount compared to what the State pays to Tyler. On the other hand, $108,000 is nothing to sneeze at.

How do I do that? And do I need to do that at a

trial, where I look at all of the evidence and then make a weighing?

MR. FETTERLY: I don't believe we need to do it at a trial.

THE COURT: Why not?

MR. FETTERLY: The Court looks at in the application of the second prong of the Press-Enterprise test, the rigorous scrutiny test. There, we are looking at whether or not there are reasonable available alternatives that would adequately protect the Court's stated interest.

THE COURT: And how do I decide if paying $108,000 is reasonable? Let's take this, for example: If it was paying a dollar a year as a matter of law, it's not reasonable to say that's too much. I can't do it. If it was a billion dollars a year, as a matter of law, that's unreasonable. How do I decide if 108,000 a year is reasonable or unreasonable?

MR. FETTERLY: I suppose if that were the only alternative, then the Court might have to make that determination as to whether that one option were reasonable. Fortunately here, that's one of several alternatives, including the free version of the press queue that the Court could host itself, and Tyler has stated in the email records that are a part of the summary judgment motion that they would provide the Oregon courts with the API, the

Application Program Interfaces, that would allow them to obtain and host the data itself so they're not having to pay the amount. So that's one alternative.

And auto-accept method is baked into the e-filing system. And it doesn't have a cost. They have not argued it does, and we know that it does not. So because we have a number of other alternatives that are free, I don't think the Court has to make a determination as to whether one of the three -- and to be clear, there are variations of the three. It's not so narrowly rigid.

THE COURT: I know.

MR. FETTERLY: I think you look at whether there are, in fact, reasonable, less restrictive alternatives, and there is no dispute in the record that there are. We have put forth significant evidence, and we have made references in the objections in the underlying motion establishing the existence of the alternatives. The defendant does not dispute that.

What they have done, from the very beginning of this, pre-litigation, and we have a very detailed record on this as well -- engaging with them. They have sought reasons to maintain the status quo. And so that's where -- we go back to this first prong. I just spoke to the second. When we go back to the first prong -- and I agree with the Court, this is the test. The Court articulated it

correctly.

THE COURT: I have got it in front of me.

MR. FETTERLY: Whether the defendant can demonstrate, first, that there is a "substantial probability" that its interests in the fair and orderly of administration of justice would be impaired by immediate access.

THE COURT: And here is what I read --

MR. FETTERLY: So have they met their burden? They have not. The findings found that they met their burden. The record in the evidence shows quite the opposite.

THE COURT: I don't know. If you were one of, let's say, between 20 and 29 people who had your confidential information inadvertently disclosed, you would be really upset. How do I decide whether that is or is not a substantial probability? Do I really need to look to see is roughly .018, does that count as a "substantial probability," or is that even what we are correctly measuring? Is that what I'm supposed to look at? How many inadvertent disclosures of confidential information occurred? Well, if it is less than 1 percent, that's probably good enough. If it is less than 2 one-hundredths of a percent, that's certainly good enough.

Is that what that means?

MR. FETTERLY: I don't think the rigorous scrutiny test picks the one example on the one side and the First Amendment on the other and asks this Court to make an ad hoc weighing.

THE COURT: So what does that "substantial probability" mean in Planet III? How does one measure the substantial probability that the Ninth Circuit directs?

MR. FETTERLY: I think when we are talking about a substantial probability of harm to the interests, we do have to look at whatever the data shows. We have the rejection data. The Court is correct about the minute percentage, the minute fraction, the less than 200 hundredths of 1 percent of a time where it might have made a mistake.

THE COURT: But it is not minute to that particular person whose confidential information is disclosed. Is that what "substantial probability" means; that, eh, if it is only a few people, we can ignore their interests?

MR. FETTERLY: The District Court in Vermont in the Gabel case gave a pretty good application where they had a similar record: A minute fraction of potential filer mistakes. And that was being insufficient to satisfy the first prong.

I want to be very clear here, because we are not just talking about the inadvertent disclosure nebulously;

findings do that. Findings make a reference to leaked information on the Internet. We are not even talking about the open Internet here. We are talking about a controlled access system. In order to have access to that system, a member of the press or the public has to apply to the Court. The Court has to approve that application. The user has to submit a form of payment, typically a credit card. Then there is the fee.

THE COURT: I get all that but --

MR. FETTERLY: I apologize, Your Honor.

THE COURT: I get all of that, but that doesn't protect against, especially a pro se, who inadvertently files a domestic violence petition, and because of this system, it now gets available on the Internet. The State has violated federal law. It doesn't protect that person just because the organization is a very credible organization.

MR. FETTERLY: I think that's why we have a two-prong test. Under the first prong, they have not established a substantial probability of harm where you have this minute fraction that -- even if the minute fraction were inadvertently disclosed, it would still be subject to these other safeguards. Then we look at are there other reasonable, less restrictive alternatives. Right now, the current policy is arguably the most restrictive alternative.

They are restricting access to 100 percent of civil complaints.

THE COURT: Their current policy -- well, I don't know about their current policy. Their policy before July 13th was problematic. Their policy after July 13th, if they're really sticking with it and achieving that, is pretty impressive. That may not be impressive enough to satisfy Planet III, but it might be. But we're making progress.

MR. FETTERLY: I would like to speak to that. I don't believe we're looking at a case where we have a "change of policy." This is not like Planet. In Planet, we had the no-access-before-process policy. Keep in mind, Planet is a paper court. Then you have the scanning policy. The scanning policy provided pre-review access, pre-processing access. The way they did that was by scanning the paper complaints upon receipt so the press could have effectively instant access. Now, people will say access was a little bit different if you have to scan a paper copy. Now, with the filing, you get the sequence at the bottom of it.

So there was a change of policy. Even then, with the change of policy, the Ninth Circuit said, "Nothing but the injunction in this case will prevent the Ventura Court from returning to its former ways" --

THE COURT: I understand that. And if you would be satisfied with an injunction that simply says, "Don't make things worse than your July 13th, 2022, policy," my guess is you'd get that probably in a consent decree or something. But you want more than that, don't you?

MR. FETTERLY: That is correct.

THE COURT: Right.

MR. FETTERLY: And here is the reason why: The current practice or the new processing standard, the July 2022 standard, it still resulted in very significant next-day delays.

THE COURT: I know. I read those points.

MR. FETTERLY: So I will say that the idea that next-day access is somehow good enough, that in itself is not consistent with Planet III, which does contemplate alternatives that would provide instant access. We know that, because immediate access is baked into the prong.

THE COURT: They do say on page 585, "This right does not entitle the press to immediate access." They do say that.

MR. FETTERLY: And I think that is speaking to the qualified nature of the First Amendment right.

THE COURT: Yeah.

MR. FETTERLY: It is not a per se right.

THE COURT: So Planet III does not dictate

immediate access.

MR. FETTERLY: Correct. Nor does it foreclose reasonable alternatives that provide immediate access. In fact, they must be considered, because the question is whether a substantial probability is that the interest would be impaired by immediate access, prong one. Prong two, reasonable alternatives.

THE COURT: I need to get to a three o'clock telephone conference in another matter, and I want to bring this to a little bit of a resolution.

Let me ask you this: What is more important to the plaintiff here? What is more important to your client: Getting essentially immediate access pre-review to all civil complaints, at least maybe filed by an attorney, not filed pro se, or continuing the litigation and running up attorney's fees that may or may not be recoverable in a 1983 action?

MR. FETTERLY: The answer would be the former.

THE COURT: Good.

MR. FETTERLY: My client wants the immediate --

THE COURT: Then why don't we do this: Let me put this on hold for 60 days, order both sides to a settlement conference, report back to me after 60 days, whether you have been able to reach a resolution or not. And if you do, terrific. If you don't, then I'll decide whether summary

judgment on this record is appropriate or whether we go to a bench trial.

Will that work?

MR. FETTERLY: I believe that's what Your Honor is inclined to do, and the plaintiff would follow Your Honor's order.

THE COURT: Will defendant follow that?

MS. BEATTY-WALTERS: Yes, Your Honor.

THE COURT: Done. Let me know in 60 days.

Mary, this motion is taken under advisement.

The parties are directed to provide a status report to the Court by November 13th. The motion is taken under advisement, and the parties are directed -- No. 1, they are ordered to a settlement conference, whether it be with a judicial settlement officer or a private mediator. You decide -- whatever you decide. If you need Court assistance, let me know, and we can find someone for you. Otherwise, you all figure out what's best for you all.

No. 1. You are ordered to a settlement conference.

No. 2. The parties are ordered to provide the Court with a joint status report not later than November 13th, 2023.

Anything else we should discuss this afternoon?

Mr. Fetterly.

MR. FETTERLY: Nothing further, Your Honor. Thank you.

MS. BEATTY-WALTERS: Nothing further.

MS. SCOTT: Nothing further.

THE COURT: All right. Good luck to you all.

(Court adjourned.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/ Dennis W. Apodaca September 19, 2023
DENNIS W. APODACA, RDR, RMR, FCRR, CRR DATE
Official Court Reporter

**MR. FETTERLY: [31]** 4/8 4/12 23/25 24/13 24/15 24/22 25/5 25/12 25/16 26/2 26/5 26/17 27/11 28/2 28/8 28/25 29/7 29/18 30/9 30/17 31/9 32/5 32/7 32/12 32/20 32/23 33/1 33/17 33/19 34/3 34/25
**MS. BEATTY-WALTERS: [34]** 4/20 7/7 7/21 8/17 8/19 8/25 9/5 9/9 9/17 9/22 10/4 10/6 13/7 13/10 13/20 13/23 14/2 15/8 15/14 16/10 16/19 16/25 17/4 17/9 17/13 19/4 19/10 19/13 19/24 20/4 20/16 21/6 34/7 35/2
**MS. SCOTT: [10]** 4/18 10/14 10/22 11/2 12/7 12/16 22/2 22/21 23/16 35/3
**THE CLERK: [1]** 4/4
**THE COURT: [73]**

**$**

**$108,000 [3]** 25/21 25/24 26/11

**-**

**--oOo [1]** 36/3

**.**

**.018 [1]** 28/18

**/**

**/s [1]** 36/10

**1**

**100 [2]** 2/11 31/1
**1000 [1]** 2/23
**108,000 [1]** 26/16
**12 [3]** 1/5 4/1 21/20
**13th [5]** 17/23 31/5 32/3 34/12 34/23
**19 [1]** 36/10
**1983 [1]** 33/16

**2**

**20 [1]** 28/14
**200 [1]** 29/12
**2020 [1]** 5/8
**2022 [3]** 17/23 32/3 32/10
**2023 [4]** 1/5 4/1 34/23 36/10
**2500 [1]** 2/3
**29 [8]** 11/14 12/24 14/18 18/14 20/12 24/12 24/22 28/14

**3**

**301 [1]** 2/23
**326-8182 [1]** 2/24
**3:21-cv-00680-YY [1]** 1/4

**4**

**4600 [1]** 2/8

**5**

**50 percent [1]** 15/23
**503 [1]** 2/24
**585 [2]** 5/10 32/18
**594 [1]** 5/18
**596 [1]** 6/4

**6**

**60 [3]** 33/22 33/23 34/9

**7**

**7th [1]** 2/5

**8**

**8182 [1]** 2/24
**89 [1]** 5/2

**9**

**94015 [2]** 2/3 2/6
**97201 [1]** 2/11
**97204 [1]** 2/23
**98104 [1]** 2/8
**999 [1]** 2/8

**A**

**able [4]** 11/4 14/16 22/15 33/24
**about [16]** 5/3 6/21 7/3 7/4 8/1 17/12 21/18 22/24 23/21 25/1 29/8 29/11 29/25 30/2 30/3 31/4
**above [1]** 36/7
**above-entitled [1]** 36/7
**absolutely [1]** 18/19
**abstention [2]** 22/23 22/25
**abuse [2]** 10/24 13/18
**abuser [1]** 10/19
**accept [3]** 21/22 25/8 27/4
**accepted [2]** 9/20 22/20
**access [42]**
**accessible [1]** 12/3
**accomplish [2]** 12/6 15/5
**achieving [1]** 31/6
**across [1]** 25/1
**Act [5]** 10/9 10/17 10/24 11/5 12/9
**action [1]** 33/17
**ad [1]** 29/3
**add [2]** 12/24 25/5
**addition [1]** 11/25
**addressed [1]** 24/16
**addresses [1]** 14/13
**adds [1]** 5/14
**adequate [1]** 8/7
**adequately [2]** 6/10 26/10
**adjourned [1]** 35/6
**administration [3]** 6/8 6/25 28/6
**administrator [6]** 1/7 4/23 16/4 19/21 21/13 22/9
**administrators [4]** 17/16 17/19 17/21 19/22
**advisement [2]** 34/10 34/13
**advocating [1]** 21/21
**affirmatively [2]** 13/16 14/11
**after [2]** 31/5 33/23
**afternoon [8]** 4/9 4/12 4/18 4/19 4/21 4/24 24/1 34/24
**again [2]** 8/11 10/3
**against [6]** 10/9 10/16 10/23 11/5 12/9 30/12
**agency [1]** 9/16
**agree [4]** 16/8 16/11 21/14 27/24
**Alabama [1]** 21/24
**all [19]** 4/18 11/23 12/8 12/12 12/23 13/4 15/10 17/6 20/22 23/22 23/24 26/1 30/9 30/11 33/13 34/18 34/18 35/5 35/5
**allegations [2]** 13/1 13/17
**alleged [1]** 10/18
**allegedly [1]** 9/4
**allow [2]** 10/9 27/1
**allowed [1]** 9/4
**allowing [1]** 15/4
**along [2]** 11/14 23/22
**already [8]** 13/9 14/4 14/15 15/10 15/13 18/17 19/23 21/20
**also [6]** 4/15 5/17 8/21 10/7 11/15 25/13
**alternative [6]** 19/7 24/23 25/8 26/19 27/3 30/25
**alternatives [23]** 6/10 12/6 12/21 13/7 18/11 18/14 19/3 20/11 21/2 21/3 24/16 24/21 24/25 25/17 26/9 26/21 27/7 27/13 27/17 30/24 32/16 33/3 33/7
**although [2]** 6/17 12/10
**always [1]** 22/18
**am [5]** 19/1 20/20 21/6 22/21 24/9
**Amendment [7]** 7/15 15/5 15/7 16/2 24/4 29/3 32/22

## A


**amount [4]** 5/23 22/10 25/23 27/3
**analysis [1]** 14/15
**and/or [1]** 14/20
**another [4]** 13/18 14/11 25/5 33/9
**answer [5]** 11/3 12/8 13/8 13/23 33/18
**any [8]** 8/24 9/7 9/24 12/25 13/3 19/3 22/20 23/12
**anymore [2]** 9/21 19/24
**anything [3]** 7/6 11/13 34/24
**API [1]** 26/25
**Apodaca [3]** 2/22 36/10 36/11
**apologize [1]** 30/10
**appearance [1]** 4/8
**APPEARANCES [1]** 2/1
**application [4]** 26/7 27/1 29/20 30/6
**apply [2]** 24/6 30/5
**approach [3]** 14/1 21/17 25/20
**approached [1]** 6/15
**appropriate [2]** 23/20 34/1
**approve [1]** 30/6
**are [69]**
**aren't [3]** 12/4 12/5 13/6
**arguably [1]** 30/25
**argued [4]** 15/25 20/12 24/23 27/5
**arguing [1]** 20/9
**argument [4]** 6/3 15/22 18/3 21/18
**arguments [1]** 24/11
**Arizona [1]** 21/23
**arrive [1]** 5/22
**articulated [1]** 27/25
**articulation [1]** 24/7
**as [23]** 1/6 5/9 5/18 6/2 6/16 7/10 7/13 8/23 12/23 14/7 15/5 15/6 15/7 15/17 16/6 17/8 21/10 26/13 26/15 26/20 27/8 27/21 28/18
**aside [3]** 8/8 8/12 10/3
**ask [6]** 6/21 21/19 22/13 23/9 23/10 33/11
**asked [1]** 23/18
**asking [3]** 16/3 16/4 17/6
**asks [1]** 29/3
**assistance [1]** 34/17
**assistants [1]** 14/21
**assuming [1]** 16/15
**attaches [1]** 5/13
**attorney [2]** 11/16 33/14
**attorney's [1]** 33/16
**attorney-filed [1]** 11/16
**attorneys [2]** 13/12 13/15
**auto [3]** 21/22 25/8 27/4
**auto-accept [2]** 25/8 27/4
**automatic [1]** 21/16
**automatically [1]** 24/4
**available [9]** 5/24 10/18 10/22 14/23 21/1 21/3 25/11 26/9 30/14
**Avenue [2]** 2/8 2/23
**away [1]** 23/2


## B


**back [5]** 21/8 24/24 27/23 27/24 33/23
**bad [1]** 18/18
**baked [2]** 27/4 32/17
**balancing [3]** 6/1 6/5 25/22
**be [52]**
**Beatty [2]** 2/10 4/22
**Beatty-Walters [2]** 2/10 4/22
**because [12]** 8/10 9/4 11/6 15/11 16/8 18/16 27/6 29/24 30/13 30/16 32/17 33/4
**been [4]** 11/4 22/25 23/1 33/24
**before [8]** 1/12 6/3 6/18 9/19 14/21 20/23 31/4 31/13
**beginning [1]** 27/19
**being [1]** 29/22
**believe [5]** 14/5 22/22 26/3 31/11 34/4
**below [1]** 36/5
**bench [6]** 16/16 16/19 19/2 23/5 23/7 34/2
**besides [1]** 7/6
**best [2]** 24/11 34/18
**better [2]** 15/3 22/17
**between [2]** 7/17 28/14
**big [2]** 10/4 24/24
**billion [1]** 26/15
**bit [8]** 5/21 7/2 10/20 12/5 23/10 25/2 31/19 33/10
**blank [1]** 22/25
**both [3]** 4/14 22/1 33/22
**bottom [1]** 31/21
**box [7]** 12/2 12/25 13/3 13/16 13/18 14/11 14/12
**boxes [3]** 14/17 14/21 14/22
**briefing [2]** 20/2 24/20
**briefly [1]** 6/23
**bring [1]** 33/9
**broaden [1]** 11/11
**brought [1]** 20/13
**Bryan [3]** 2/2 2/5 4/14
**burden [5]** 6/13 16/9 21/1 28/9 28/11


## C


**CA [2]** 2/3 2/6
**California [1]** 21/23
**call [1]** 4/4
**came [1]** 19/6
**camp [1]** 22/25
**can [13]** 8/2 9/24 11/7 13/2 13/25 14/22 21/25 23/14 23/14 25/18 28/3 29/17 34/17
**can't [6]** 7/25 18/19 19/23 19/24 22/2 26/14
**cannot [2]** 10/9 11/9
**capacity [1]** 1/6
**card [1]** 30/7
**Carla [2]** 2/9 4/20
**Carla Scott [1]** 4/20
**case [9]** 4/4 4/7 6/2 11/8 19/15 23/18 29/20 31/11 31/24
**Case No. 3:21-cv-680-YY [1]** 4/7
**cases [2]** 15/23 20/1
**cause [1]** 36/7
**Cave [3]** 2/2 2/5 4/14
**Center [2]** 2/3 2/5
**cert [1]** 22/20
**certainly [2]** 23/1 28/24
**certified [1]** 36/9
**certify [1]** 36/5
**chance [1]** 12/18
**change [4]** 17/23 31/12 31/22 31/23
**chase [1]** 7/2
**check [8]** 12/25 13/3 14/11 14/12 14/17 14/21 14/22 22/11
**checks [1]** 13/9
**Christina [1]** 4/22
**Christine [1]** 2/10
**Circuit [14]** 5/8 5/11 5/14 6/4 7/13 16/1 21/11 21/15 22/16 23/2 23/7 24/3 29/7 31/23
**Circuit's [1]** 5/7
**cited [1]** 20/1
**civil [3]** 5/12 31/1 33/13
**claiming [1]** 17/24
**clarify [1]** 24/8
**Clark [2]** 2/7 4/17
**clear [4]** 9/8 11/25 27/9 29/24
**clearly [2]** 9/13 24/21

## C

clerk [1] 11/8
clerks [1] 9/2
click [3] 12/2 13/16 13/18
client [3] 20/18 33/12 33/20
clients [1] 21/8
closed [1] 19/16
closely [1] 5/6
come [1] 18/13
compared [1] 25/23
complaint [6] 5/14 8/6 9/3 9/4 10/1 12/25
complaints [11] 5/13 5/16 5/20 5/24 11/16 15/24 22/2 24/5 31/2 31/17 33/14
compliance [1] 11/9
complied [1] 7/11
comply [2] 10/8 12/11
complying [1] 10/11
concede [2] 12/10 15/10
concern [1] 7/3
concerns [1] 5/6
concession [1] 14/18
conclusion [1] 5/18
conference [7] 23/18 23/20 23/22 33/9 33/23 34/14 34/20
confidential [10] 7/4 8/2 8/12 13/3 17/17 22/1 22/12 28/15 28/21 29/15
confidentiality [3] 8/9 8/21 10/3
configured [1] 25/18
confirm [2] 13/4 14/12
conformed [1] 36/8
Connecticut [1] 21/24
consent [1] 32/4
consider [1] 20/6
considered [4] 8/15 8/17 13/2 33/4
consistent [1] 32/15
constitutionally [2] 5/24 7/20
contemplate [1] 32/15
contend [1] 17/8
continues [1] 25/2
continuing [1] 33/15
control [1] 9/21
controlled [1] 30/3
copy [1] 31/20
core [1] 5/22
correct [14] 7/22 17/19 19/9 20/17 22/21 22/22 24/13 24/14 25/1 25/6 29/11 32/6 33/2 36/6
corrections [1] 17/15
correctly [3] 17/21 28/1 28/19
cost [1] 27/5
costs [1] 25/20
could [12] 6/23 11/15 18/14 18/24 19/19 20/8 20/13 22/15 22/18 24/24 26/23 31/18
couldn't [1] 14/6
counsel [2] 4/7 4/13
count [1] 28/18
county [4] 6/6 16/1 19/21 21/11
couple [1] 18/13
course [3] 11/22 20/3 22/18
court [63]
Court's [1] 26/10
COURTHOUSE [12] 1/3 2/22 4/6 4/10 4/15 5/7 6/16 6/17 15/22 22/5 23/13 23/24
courtroom [1] 4/16
courts [8] 8/10 8/21 9/15 10/8 11/23 24/25 25/1 26/25
courts' [1] 8/7
COZINE [3] 1/6 4/6 11/15
credible [1] 30/16
credit [1] 30/7
cross [2] 15/21 18/8
cross-motion [1] 18/8
cross-motions [1] 15/21
CRR [2] 2/22 36/11
cudgel [1] 8/23
current [5] 5/5 30/25 31/3 31/4 32/9
currently [1] 11/18
cut [1] 7/2
cv [2] 1/4 4/7

## D

data [3] 27/2 29/10 29/11
date [2] 25/2 36/11
day [5] 8/13 10/2 15/25 32/11 32/14
daylight [2] 7/16 7/20
days [3] 33/22 33/23 34/9
deal [2] 10/4 21/25
decide [12] 16/19 18/2 18/7 19/2 25/19 25/21 26/11 26/16 28/16 33/25 34/16 34/16
decided [1] 15/20
deciding [1] 19/1
decision [9] 5/7 5/8 5/11 12/18 19/18 22/4 22/6 22/7 22/10
declaration [2] 24/18 24/20
declarations [1] 19/20
declaratory [1] 16/17
declined [1] 23/19
decree [1] 32/4
defamatory [1] 9/5
defaming [1] 9/1
defendant [9] 1/8 2/9 4/22 6/13 11/18 16/9 27/17 28/3 34/7
defendant's [1] 6/24
defendants [2] 4/20 6/21
deference [1] 21/12
delay [1] 5/23
delays [1] 32/11
delicate [1] 23/21
demanding [1] 5/19
demonstrate [4] 6/6 6/13 6/17 28/4
denied [1] 16/22
Dennis [3] 2/22 36/10 36/11
deny [1] 23/4
department [2] 2/10 18/2
depending [1] 25/4
detail [1] 24/18
detailed [1] 27/20
determination [2] 26/20 27/8
determine [2] 11/4 21/8
developed [1] 15/12
dictate [1] 32/25
did [7] 15/18 16/20 16/22 21/15 24/15 24/20 31/16
didn't [8] 18/16 18/19 18/21 19/3 20/9 20/15 21/4 24/12
difference [1] 6/19
different [3] 22/14 25/18 31/19
digitally [1] 36/8
directed [2] 34/11 34/13
directs [1] 29/7
disagree [1] 24/7
disclosed [3] 28/15 29/16 30/22
disclosure [2] 7/3 29/25
disclosures [1] 28/21
discretion [2] 19/19 20/3
discuss [3] 23/14 23/19 34/24
dispute [12] 5/23 17/20 18/5 18/6 18/9 18/18 18/21 19/1 20/15 22/5 27/14 27/18
disputed [5] 16/15 16/18 17/4 17/7 17/11
DISTRICT [6] 1/1 1/2 1/13 2/22 20/10 29/19
dive [1] 6/20

## D

**do [49]**
**Docket [1]** 5/2
**document [1]** 25/10
**documents [1]** 17/17
**does [17]** 5/15 10/13 10/21 12/25 13/15 20/2 24/3 27/6 27/6 27/17 28/18 29/5 29/6 32/15 32/19 32/25 33/2
**doesn't [8]** 8/9 8/10 11/9 14/25 24/4 27/5 30/11 30/15
**doing [5]** 17/21 18/11 18/17 19/24 23/6
**dollar [1]** 26/13
**dollars [1]** 26/15
**domestic [10]** 10/24 11/1 12/1 13/1 13/1 13/2 13/17 13/17 14/14 30/13
**don't [25]** 8/13 8/22 11/22 13/21 13/24 14/10 14/10 15/1 15/11 17/20 19/16 22/19 23/6 24/7 25/19 26/3 27/7 28/13 29/1 31/3 31/11 32/2 32/5 33/21 33/25
**done [5]** 8/5 13/25 19/23 27/19 34/9
**drive [1]** 16/25
**duties [1]** 12/11

## E

**e-filing [2]** 25/15 27/4
**effectively [3]** 18/8 25/9 31/18
**eh [1]** 29/17
**either [2]** 18/21 21/21
**electronic [1]** 13/15
**electronically [1]** 14/12
**else [2]** 7/6 34/24
**email [1]** 26/23
**Embarcadero [2]** 2/3 2/5
**enable [1]** 18/24
**engaging [1]** 27/21
**enough [5]** 17/25 28/23 28/24 31/7 32/14
**ensure [1]** 11/9
**ensuring [1]** 8/22
**enter [1]** 4/8
**Enterprise [3]** 6/5 21/17 26/7
**entitle [3]** 5/15 24/4 32/19
**entitled [3]** 7/14 17/3 36/7
**Eric [2]** 2/7 4/16
**errors [1]** 17/17
**especially [1]** 30/12
**essentially [1]** 33/13
**established [1]** 30/20
**establishing [1]** 27/16
**even [8]** 5/11 10/17 20/8 20/25 28/19 30/2 30/21 31/22
**everyone [1]** 23/15
**evidence [10]** 6/23 7/9 9/7 15/22 19/19 20/14 20/18 26/1 27/15 28/11
**exactly [3]** 10/13 18/10 19/17
**example [5]** 8/23 9/12 12/22 26/12 29/2
**excellent [1]** 17/22
**excluding [2]** 11/16 14/16
**excuse [1]** 20/8
**exempt [2]** 8/14 11/12
**exist [2]** 6/10 17/9
**existence [1]** 27/17
**existing [1]** 14/4
**extremely [2]** 20/2 20/4

## F

**fact [15]** 14/4 15/12 16/10 16/15 16/18 17/4 17/7 17/11 17/15 19/1 20/15 23/17 25/1 27/13 33/4
**factor [1]** 20/24
**factors [1]** 23/8
**facts [3]** 18/5 18/6 21/9
**factual [1]** 20/14
**fair [3]** 6/7 6/25 28/5
**FCRR [2]** 2/22 36/11
**feasible [1]** 19/23
**federal [10]** 10/7 10/12 10/13 10/21 11/8 11/10 11/23 12/13 25/9 30/15
**fee [6]** 8/5 8/11 8/13 8/16 9/3 30/8
**feel [1]** 24/8
**fees [1]** 33/16
**Fetterly [5]** 2/2 4/10 23/25 24/3 34/25
**few [2]** 7/5 29/17
**fight [1]** 22/17
**figure [1]** 34/18
**file [3]** 11/7 12/11 14/22
**filed [20]** 5/12 5/14 5/19 5/23 8/11 9/19 11/5 11/13 11/16 11/24 12/9 12/13 12/14 14/20 17/17 17/18 20/6 20/7 33/14 33/14
**filer [3]** 13/16 25/10 29/21
**filers [1]** 11/6
**files [1]** 30/13
**filing [14]** 8/5 8/11 8/13 8/16 9/3 12/12 12/24 13/15 13/18 13/19 14/10 25/15 27/4 31/20
**filings [6]** 11/12 11/17 12/23 14/7 14/16 14/18
**find [4]** 18/4 18/10 20/18 34/17
**findings [6]** 5/1 5/2 20/22 28/10 30/1 30/1
**fine [3]** 8/12 10/1 23/5
**first [20]** 6/6 6/12 7/6 7/15 8/17 8/18 15/5 15/7 15/9 15/15 16/2 22/24 24/4 27/23 27/24 28/4 29/2 29/23 30/19 32/22
**fits [1]** 25/21
**flag [1]** 9/14
**Floor [1]** 2/5
**folks [3]** 8/4 14/24 19/21
**follow [3]** 14/17 34/5 34/7
**foreclose [1]** 33/2
**foregoing [1]** 36/5
**form [1]** 30/7
**former [2]** 31/25 33/18
**forth [1]** 27/15
**Fortunately [1]** 26/21
**forward [2]** 18/13 19/7
**found [1]** 28/10
**fraction [4]** 29/12 29/21 30/21 30/21
**Francisco [2]** 2/3 2/6
**Frankly [2]** 11/13 15/3
**free [3]** 24/8 26/22 27/7
**front [1]** 28/2
**full [1]** 10/17
**further [6]** 12/3 15/18 23/13 35/1 35/3 35/4

## G

**Gabel [1]** 29/20
**gave [2]** 21/11 29/20
**genuine [2]** 16/10 16/14
**Georgia [1]** 21/23
**get [13]** 7/3 7/4 8/12 8/12 10/2 18/12 18/12 24/6 30/9 30/11 31/20 32/4 33/8
**gets [1]** 30/14
**Getting [1]** 33/13
**Girdner [2]** 4/15 24/17
**give [3]** 6/1 8/1 8/3
**given [2]** 19/20 23/7
**gives [2]** 8/7 12/18
**giving [1]** 9/16
**glean [1]** 6/12
**go [12]** 11/14 14/7 14/25 19/2 20/17 21/7 23/22 24/19 25/20 27/23 27/24 34/1
**goes [1]** 9/20
**going [6]** 7/25 8/3 9/2 15/17 19/1 24/19

## G

**good [16]** 4/9 4/12 4/18 4/19 4/21 4/24 13/10 13/13 17/25 24/1 28/23 28/24 29/20 32/14 33/19 35/5
**got [2]** 16/12 28/2
**governmental [1]** 6/10
**grant [1]** 21/13
**great [3]** 20/8 24/11 24/18
**grow [1]** 25/2
**guess [1]** 32/4

## H

**had [5]** 19/7 19/12 28/14 29/20 31/13
**hand [3]** 5/10 25/22 25/24
**happening [2]** 15/11 15/13
**happy [1]** 21/7
**hard [1]** 18/12
**harm [2]** 29/9 30/20
**has [16]** 5/12 8/11 9/4 9/21 11/4 19/19 22/9 22/14 22/20 23/2 26/23 27/8 30/5 30/6 30/6 30/15
**have [58]**
**haven't [2]** 8/4 8/5
**having [2]** 22/24 27/2
**Hawaii [1]** 21/24
**heard [1]** 22/24
**hearing [2]** 1/10 3/2
**her [3]** 1/6 6/18 20/22
**here [20]** 4/5 4/25 6/19 7/13 16/3 16/4 17/4 18/13 20/10 20/14 21/2 21/13 21/21 22/9 26/21 28/8 29/24 30/3 32/8 33/12
**Hillis [2]** 2/7 4/17
**hoc [1]** 29/3
**hold [2]** 15/16 33/22
**Honor [21]** 4/5 4/9 4/19 4/21 7/8 10/15 13/8 13/22 14/8 15/9 16/20 19/5 21/8 22/3 23/17 24/1 24/25 30/10 34/4 34/8 35/1
**Honor's [1]** 34/5
**HONORABLE [1]** 1/12
**hook [1]** 23/10
**host [2]** 26/23 27/2
**hosted [2]** 25/15 25/20
**how [10]** 9/16 25/4 25/19 25/21 25/25 26/11 26/16 28/16 28/20 29/6
**However [1]** 5/14
**human [4]** 11/5 11/9 12/16 15/4
**hundredths [2]** 28/23 29/12

## I

**I'll [2]** 23/9 33/25
**I'm [17]** 5/6 10/6 12/4 13/14 13/18 14/15 14/18 16/15 16/24 17/6 17/12 17/23 18/25 21/14 23/5 24/19 28/20
**idea [1]** 32/13
**identify [1]** 6/23
**ignore [1]** 29/17
**Il's [1]** 6/5
**III [22]** 5/9 6/2 6/22 8/17 12/18 15/8 15/18 15/18 16/9 17/25 18/1 18/25 21/4 21/10 22/6 22/19 23/7 23/15 29/6 31/8 32/15 32/25
**illegal [1]** 8/24
**immediate [17]** 5/15 5/19 6/9 7/1 7/14 7/17 11/2 11/12 24/5 28/6 32/17 32/19 33/1 33/3 33/6 33/13 33/20
**immediately [3]** 12/3 14/23 19/8
**impaired [4]** 6/8 6/25 28/6 33/6
**implement [1]** 21/20
**implicit [1]** 18/8
**important [4]** 12/10 12/19 33/11 33/12
**impossible [1]** 18/20
**impressed [1]** 17/23
**impressive [2]** 31/7 31/7
**improperly [2]** 17/16 17/18
**inadvertent [3]** 7/3 28/21 29/25
**inadvertently [3]** 28/15 30/12 30/22
**inclined [1]** 34/5
**including [4]** 10/8 22/23 23/15 26/22
**INDEX [1]** 3/1
**information [13]** 7/4 9/18 10/10 10/18 13/3 13/4 17/18 22/1 22/12 28/15 28/21 29/15 30/2
**injunction [2]** 31/24 32/2
**injunctive [1]** 16/17
**instant [2]** 31/18 32/16
**insufficient [2]** 7/20 29/22
**integrity [1]** 7/10
**interest [8]** 6/11 6/24 8/21 9/24 12/7 12/19 26/10 33/5
**interests [5]** 6/7 7/10 28/5 29/9 29/18
**Interfaces [1]** 27/1
**interfere [2]** 8/9 9/17
**Internet [4]** 10/10 30/2 30/3 30/14
**interrupting [1]** 16/25
**invite [1]** 4/7
**involve [1]** 12/25
**is [128]**
**isn't [5]** 9/7 9/23 10/25 11/21 14/1
**issue [8]** 15/19 16/10 17/4 17/10 17/14 18/18 22/24 23/2
**issues [7]** 10/3 16/14 16/18 17/7 22/20 23/13 23/21
**it [62]**
**it's [14]** 7/9 8/21 14/9 17/10 17/11 17/14 19/6 20/2 20/5 21/19 22/3 25/10 26/13 27/10
**its [4]** 6/7 9/24 28/5 31/25
**itself [3]** 26/23 27/2 32/14

## J

**job [1]** 17/22
**joint [1]** 34/22
**Jonathan [2]** 2/2 4/10
**judge [11]** 1/13 5/1 6/15 16/12 16/22 19/19 20/9 20/10 20/21 24/13 24/21
**Judge You [1]** 24/21
**judge's [1]** 19/18
**judgment [15]** 6/18 15/21 16/8 16/21 16/24 17/2 17/4 17/8 18/8 18/9 20/24 23/5 24/17 26/24 34/1
**judicial [2]** 5/4 34/15
**July [5]** 17/23 31/5 31/5 32/3 32/10
**July 13th [2]** 17/23 32/3
**July 13th was [1]** 31/5
**July 2022 [1]** 32/10
**jury [1]** 16/16
**just [10]** 7/10 8/20 9/3 15/4 15/17 18/9 19/7 27/23 29/25 30/16
**justice [4]** 2/10 6/8 6/25 28/6
**justified [1]** 5/25

## K

**Katherine [1]** 2/4
**Kathleen [1]** 4/14
**Keating [3]** 2/4 4/14 23/25
**Keep [1]** 31/13
**key [2]** 6/2 6/3
**kicked [1]** 8/6
**kind [2]** 9/13 18/11
**know [21]** 5/3 5/9 12/4 12/12 13/14 13/23 13/25 18/5 19/18 23/6 24/11 25/12 25/16 27/6 27/11 28/13 31/4 32/12 32/16 34/9 34/17

## L

**Lansverk [2]** 2/7 4/16

L

late [2] 20/6 20/7
late-filed-with-objections [1] 20/6
later [4] 5/17 5/21 8/2 34/22
law [12] 10/7 10/12 10/13 10/16 10/21 11/8 11/10 11/23 20/1 26/13 26/15 30/15
lawyer [1] 12/24
lawyers [5] 12/1 12/11 12/12 12/14 14/20
lawyers' [1] 14/21
lays [1] 24/18
leaked [1] 30/1
least [6] 6/14 14/23 15/24 19/20 22/10 33/14
legitimate [1] 15/6
Leighton [3] 2/2 2/5 4/14
less [6] 15/3 27/13 28/22 28/23 29/12 30/24
let [12] 5/5 10/20 11/11 13/13 21/19 22/13 23/9 23/9 33/11 33/21 34/9 34/17
let's [4] 6/22 7/2 26/12 28/14
lies [1] 5/22
light [1] 14/3
like [11] 4/7 6/20 8/16 8/25 9/1 13/5 14/14 21/9 23/1 31/10 31/12
limit [1] 11/15
limited [1] 22/10
list [1] 25/2
litigants [1] 11/7
litigation [3] 22/7 27/20 33/15
little [7] 5/21 7/2 10/20 12/5 23/10 31/19 33/10
LLP [2] 2/2 2/5
local [1] 19/21
long [1] 14/25
look [10] 7/21 16/6 23/8 24/19 26/1 27/12 28/17 28/20 29/10 30/23
looking [5] 5/6 18/25 23/6 26/8 31/11
looks [2] 23/1 26/6
lose [1] 21/5
luck [1] 35/5

M

made [13] 10/18 12/12 14/8 17/16 17/17 22/4 22/5 22/7 22/9 24/11 25/10 27/15 29/13
magistrate [2] 5/1 19/18
maintain [1] 27/22
make [14] 6/19 10/11 11/25 12/12 13/13 14/11 24/12 24/15 26/1 26/19 27/8 29/3 30/1 32/3
making [5] 5/23 7/11 10/22 18/3 31/8
many [2] 22/4 28/20
Market [1] 2/11
Martin [2] 2/7 4/17
Mary [2] 4/4 34/10
material [6] 16/10 17/4 17/7 17/11 17/15 20/6
matter [4] 4/5 26/13 26/15 33/9
may [10] 6/18 6/18 14/16 14/16 15/12 20/25 25/5 31/7 33/16 33/16
maybe [2] 7/5 33/14
me [25] 4/13 5/5 6/23 10/20 11/11 13/13 16/8 16/14 17/6 18/20 19/20 20/23 21/19 22/13 23/2 23/8 23/9 24/2 25/20 28/2 33/11 33/21 33/23 34/9 34/17
mean [1] 29/6
meaning [2] 22/13 22/15
meanings [1] 22/15
means [2] 28/25 29/16
measure [2] 7/19 29/6
measuring [1] 28/20
mediator [1] 34/15
member [1] 30/5
merits [1] 6/20
met [2] 28/9 28/10
method [1] 27/4
MICHAEL [1] 1/12
might [6] 18/18 18/21 22/15 26/19 29/13 31/8
mind [1] 31/13
minority [1] 23/1
minute [6] 29/11 29/12 29/14 29/21 30/21 30/21
misapplied [1] 20/21
misfiled [1] 22/12
missing [1] 10/6
mistake [1] 29/13
mistakes [4] 12/12 12/13 14/8 29/22
misusing [3] 9/13 9/15 9/25
moments [1] 7/5
more [11] 6/22 11/21 12/20 13/6 14/1 15/23 20/11 21/11 32/5 33/11 33/12
most [1] 30/25
mostly [1] 18/14
motion [13] 1/10 3/2 6/17 16/7 18/8 20/23 20/24 23/4 24/17 26/24 27/16 34/10 34/12
motions [1] 15/21
move [1] 16/21
moved [2] 16/23 17/2
moving [1] 17/22
Mr [2] 24/3 34/25
Mr. [2] 4/15 23/25
Mr. Fetterly [1] 23/25
Mr. William [1] 4/15
Ms. [2] 11/15 23/25
Ms. Cozine [1] 11/15
Ms. Keating [1] 23/25
much [1] 26/14
must [2] 6/6 33/4
my [15] 5/5 10/15 10/24 11/11 18/2 19/6 19/14 20/18 21/8 21/19 22/3 24/7 24/9 32/3 33/20

N

NANCY [1] 1/6
narrowed [2] 12/21 13/6
narrowly [5] 11/21 12/6 14/1 20/11 27/10
nation [1] 25/1
nature [1] 32/22
nebulously [1] 29/25
need [11] 10/8 10/11 16/18 18/5 18/7 22/1 25/25 26/3 28/17 33/8 34/16
needed [1] 6/16
needs [3] 7/12 12/14 13/4
negative [1] 18/12
Neither [1] 12/16
Nevada [1] 21/23
new [3] 19/19 21/24 32/9
New York [1] 21/24
newly [3] 5/12 5/19 5/23
news [10] 1/3 4/6 4/11 4/16 5/7 6/16 9/16 22/5 23/13 23/24
News' [2] 6/17 15/22
next [3] 15/25 32/11 32/14
next-day [2] 32/11 32/14
nine [1] 5/17
Ninth [15] 5/7 5/8 5/11 5/14 6/4 7/13 16/1 21/11 21/15 22/16 23/2 23/7 24/3 29/7 31/23
Ninth Circuit [14] 5/8 5/11 5/14 6/4 7/13 16/1 21/11 21/15 22/16 23/2 23/7 24/3 29/7 31/23
Ninth Circuit's [1] 5/7
no [19] 6/9 9/9 9/21 13/17 13/19 14/13 14/13 16/23 17/3 18/6 18/10 18/19 19/17 21/1 21/15 27/14 31/13 34/13 34/21
no-access-before-process [1] 31/13
No. [4] 4/7 12/10 12/10 34/19

**N**

**No. 1 [2]** 12/10 34/19
**No. 2 [1]** 12/10
**nonconfidential [1]** 5/13
**not [60]**
**noted [1]** 7/14
**nothing [8]** 9/10 11/24 18/9 25/24 31/23 35/1 35/3 35/4
**notice [1]** 5/4
**November [2]** 34/12 34/23
**November 13th [2]** 34/12 34/23
**now [15]** 12/4 14/6 15/11 16/14 18/25 19/9 20/9 20/10 20/20 20/24 22/18 30/14 30/24 31/18 31/20
**number [4]** 5/9 17/15 22/14 27/7
**numbers [2]** 13/19 14/13

**O**

**o'clock [1]** 33/8
**objections [11]** 4/25 5/3 11/15 18/15 19/6 19/10 20/6 20/21 20/25 24/12 27/16
**objectives [2]** 15/5 15/6
**obtain [1]** 27/2
**obviously [1]** 7/23
**occurred [1]** 28/22
**off [3]** 12/22 14/18 23/10
**offer [1]** 22/4
**offered [1]** 19/20
**officer [1]** 34/15
**official [2]** 1/6 36/11
**often [1]** 11/6
**Oh [1]** 22/15
**OJCIN [1]** 11/20
**okay [8]** 7/23 8/7 10/25 11/1 11/11 15/14 17/13 18/20
**once [2]** 9/18 9/20
**one [27]** 5/10 9/12 10/2 12/22 14/9 15/19 16/12 18/7 18/18 18/24 21/4 22/15 22/17 25/5 25/7 25/7 25/22 26/20 26/21 27/3 27/8 28/13 28/23 29/2 29/2 29/6 33/6
**one-hundredths [1]** 28/23
**online [2]** 10/16 10/22
**only [5]** 11/16 16/16 19/6 26/18 29/17
**oOo [1]** 36/3
**open [2]** 4/3 30/3
**opponent [1]** 17/8
**opportunity [2]** 19/12 19/16
**opposite [1]** 28/12
**opposition [1]** 16/7
**option [2]** 25/7 26/20
**options [1]** 19/22
**order [4]** 23/21 30/4 33/22 34/6
**ordered [3]** 34/14 34/19 34/21
**orderly [4]** 6/8 6/25 22/2 28/5
**OREGON [6]** 1/2 1/6 1/6 2/10 22/2 26/25
**organization [2]** 30/16 30/17
**original [1]** 36/7
**other [8]** 7/10 8/24 18/7 25/24 27/7 29/3 30/23 30/23
**otherwise [2]** 8/14 34/18
**our [4]** 8/5 19/25 20/1 21/10
**out [10]** 8/6 8/22 9/20 9/20 18/10 20/18 22/17 24/18 24/21 34/18
**outset [1]** 23/18
**over [1]** 9/21

**P**

**page [12]** 5/10 5/18 5/21 6/4 11/14 12/24 14/18 18/14 20/12 24/12 24/22 32/18
**page 594 [1]** 5/18
**pages [1]** 5/17
**paid [2]** 8/4 9/3
**Paisner [3]** 2/2 2/5 4/15
**paper [3]** 31/14 31/17 31/20
**part [1]** 26/24
**participate [1]** 23/19
**particular [1]** 29/15
**parties [3]** 34/11 34/13 34/21
**pay [3]** 8/10 8/13 27/2
**paying [2]** 26/11 26/13
**payment [1]** 30/7
**pays [1]** 25/23
**people [7]** 5/9 8/22 14/7 14/9 28/14 29/17 31/18
**per [1]** 32/24
**per se [1]** 32/24
**percent [5]** 15/23 28/22 28/24 29/12 31/1
**percentage [1]** 29/11
**perfect [1]** 12/15
**period [1]** 10/17
**person [3]** 9/13 29/15 30/15
**Peterson [2]** 2/7 4/17
**petition [5]** 11/4 11/7 12/1 13/2 30/13
**petitions [5]** 10/17 10/23 10/24 11/1 12/9
**phrase [1]** 22/14
**picks [1]** 29/2
**place [1]** 13/9
**plaintiff [13]** 1/4 2/2 4/8 4/10 9/16 11/13 18/3 19/7 21/21 23/11 24/5 33/12 34/5
**plaintiff's [2]** 4/25 14/17
**plaintiffs [4]** 7/14 12/23 17/24 23/19
**Planet [26]** 5/8 5/9 6/2 6/22 8/17 12/18 15/8 15/18 15/18 16/9 17/25 18/1 18/25 21/4 21/10 22/6 22/19 23/7 23/15 29/6 31/8 31/12 31/12 31/14 32/15 32/25
**Planet III [5]** 6/22 12/18 15/8 18/1 22/19
**plausible [1]** 20/10
**please [1]** 4/4
**point [2]** 15/12 16/25
**points [3]** 20/19 24/15 32/12
**policies [1]** 15/19
**policy [22]** 15/20 15/20 15/22 16/2 17/24 22/4 22/5 22/7 22/10 22/14 30/25 31/3 31/4 31/4 31/5 31/12 31/13 31/14 31/15 31/22 31/23 32/3
**ponder [1]** 23/12
**Portland [3]** 1/6 2/11 2/23
**position [1]** 22/14
**possessing [1]** 11/15
**post [1]** 11/19
**post-processing [1]** 11/19
**posting [1]** 10/16
**posture [1]** 19/15
**potential [1]** 29/21
**practice [1]** 32/9
**pre [18]** 5/19 8/1 8/3 8/9 9/16 11/2 11/12 11/15 11/18 14/23 14/24 14/24 21/16 21/20 27/20 31/15 31/16 33/13
**pre-litigation [1]** 27/20
**pre-possessing [1]** 11/15
**pre-processing [5]** 5/19 11/18 14/24 21/16 31/16
**pre-registered [1]** 14/24
**pre-review [10]** 8/1 8/3 8/9 9/16 11/2 11/12 14/23 21/20 31/15 33/13
**precisely [1]** 10/21
**present [1]** 20/9
**presented [1]** 18/23
**preserve [1]** 23/21
**press [12]** 5/12 5/15 6/5 11/17 21/17 21/21 25/13 26/7 26/22 30/5 31/17 32/19
**Press-Enterprise [3]** 6/5 21/17 26/7
**pretty [2]** 29/20 31/7
**prevent [1]** 31/24

## P


**primarily [1]** 7/9
**primary [1]** 24/24
**private [1]** 34/15
**pro [10]** 11/7 11/13 11/16 11/24 12/9 12/23 14/16 14/18 30/12 33/15
**pro se [10]** 11/7 11/13 11/16 11/24 12/9 12/23 14/16 14/18 30/12 33/15
**probability [13]** 6/7 6/24 15/1 15/4 28/5 28/17 28/19 29/6 29/7 29/9 29/16 30/20 33/5
**probably [2]** 28/23 32/4
**problem [9]** 6/3 6/15 6/16 10/3 10/25 11/22 14/2 20/12 21/4
**problematic [1]** 31/5
**problems [1]** 14/25
**proceedings [2]** 1/11 36/6
**process [1]** 31/13
**processes [1]** 8/8
**processing [8]** 5/19 11/18 11/19 14/24 21/16 22/2 31/16 32/9
**Program [1]** 27/1
**progress [1]** 31/9
**progresses [1]** 25/4
**prohibit [2]** 10/14 10/21
**prohibits [1]** 10/16
**prong [25]** 6/1 6/5 6/22 7/7 7/21 8/17 8/18 12/5 16/8 18/24 18/25 21/4 21/5 21/17 24/6 25/22 26/7 27/23 27/24 29/23 30/19 30/19 32/17 33/6 33/6
**prong-one [1]** 21/4
**prongs [7]** 6/13 6/21 18/4 18/6 18/7 22/16 23/16
**properly [1]** 12/11
**protect [7]** 6/10 12/18 22/1 22/11 26/10 30/12 30/15
**prove [1]** 18/12
**provide [6]** 19/8 26/25 32/16 33/3 34/11 34/21
**provided [1]** 31/15
**public [6]** 8/4 8/22 9/23 11/17 22/11 30/5
**publicly [1]** 5/24
**purview [1]** 22/8
**put [6]** 10/9 19/7 24/20 24/21 27/15 33/21
**putting [3]** 8/8 8/11 10/3


## Q


**qualified [1]** 32/22
**question [7]** 5/22 11/3 11/11 17/11 23/9 24/9 33/4
**questions [2]** 5/5 23/10
**queue [3]** 21/22 25/14 26/22
**quintessential [1]** 16/7
**quite [3]** 5/6 17/15 28/11
**quo [1]** 27/22


## R


**raises [1]** 9/14
**rapidly [1]** 17/22
**rare [3]** 20/2 20/4 20/5
**RDR [2]** 2/22 36/11
**reach [1]** 33/24
**read [9]** 5/2 5/3 6/14 15/7 17/21 18/16 21/10 28/8 32/12
**real [1]** 11/25
**really [9]** 6/21 9/2 17/23 18/12 20/7 24/10 28/16 28/17 31/6
**reason [1]** 32/8
**reasonable [12]** 6/9 18/11 25/8 26/9 26/12 26/14 26/17 26/20 27/13 30/24 33/3 33/7
**reasonably [6]** 12/6 12/20 13/6 19/3 21/1 21/3
**reasons [1]** 27/22
**receipt [2]** 21/22 31/17
**recite [1]** 14/6
**recommendations [3]** 5/1 5/2 20/23
**record [17]** 4/8 7/11 9/7 9/11 13/22 15/11 19/4 19/15 24/10 25/3 25/7 27/14 27/20 28/11 29/21 34/1 36/6
**records [1]** 26/23
**recoverable [1]** 33/16
**red [1]** 9/14
**redacted [2]** 13/4 13/5
**reducing [1]** 14/25
**refer [1]** 5/9
**reference [1]** 30/1
**references [1]** 27/15
**register [1]** 11/17
**registered [1]** 14/24
**registration [1]** 11/19
**reiterated [1]** 5/17
**reject [2]** 9/3 10/1
**rejection [1]** 29/10
**released [2]** 15/24 15/24
**relief [1]** 16/17
**report [3]** 33/23 34/12 34/22
**REPORTER [2]** 2/22 36/11
**request [1]** 5/4
**require [6]** 10/14 11/17 13/11 13/14 13/16 14/10
**required [1]** 10/18
**requirement [1]** 14/4
**requirements [3]** 7/24 8/8 14/7
**requires [2]** 11/19 15/7
**resolution [4]** 23/14 23/19 33/10 33/24
**resolve [1]** 24/10
**respect [2]** 7/24 8/7
**respond [1]** 19/13
**response [2]** 18/17 21/10
**responses [1]** 5/3
**restricting [1]** 31/1
**restrictive [3]** 27/13 30/24 30/25
**resulted [1]** 32/10
**returning [1]** 31/25
**review [16]** 8/1 8/3 8/9 9/16 11/2 11/6 11/9 11/12 12/3 14/5 14/23 19/18 21/20 25/13 31/15 33/13
**reviewers [1]** 12/16
**rewind [1]** 10/20
**right [30]** 5/12 5/15 6/20 7/17 7/19 7/21 9/22 10/5 11/23 12/16 12/22 13/25 14/6 15/11 15/19 17/5 18/1 18/3 19/11 19/17 19/24 20/10 21/16 23/24 30/24 32/7 32/18 32/22 32/24 35/5
**rigid [1]** 27/10
**rigorous [2]** 26/8 29/1
**risks [1]** 22/6
**RMR [1]** 36/11
**Room [1]** 2/23
**roughly [1]** 28/18
**rules [4]** 7/11 7/24 8/2 8/6
**running [1]** 33/15


## S


**safeguards [1]** 30/23
**safety [1]** 22/11
**said [4]** 16/1 18/13 18/17 31/23
**same [1]** 11/18
**San [2]** 2/3 2/6
**satisfied [2]** 7/25 32/2
**satisfies [1]** 23/15
**satisfy [8]** 8/2 9/24 18/24 22/16 22/17 23/14 29/22 31/8
**saw [2]** 14/17 19/9
**say [21]** 5/18 5/21 11/14 14/21 18/10 18/16 18/19 18/19 18/21 18/24 20/8 20/13 21/2 21/15 24/4 26/14 28/14 31/18 32/13 32/18 32/20
**saying [10]** 7/13 7/16 7/25 8/3 11/1 16/23 16/24 17/3 18/25

## S


**saying... [1]** 20/25
**says [7]** 11/13 12/1 13/16 14/12 18/2 22/16 32/2
**scan [1]** 31/19
**scanning [7]** 15/19 15/20 15/21 16/2 31/14 31/15 31/17
**scenario [1]** 8/24
**schedule [1]** 23/5
**Scott [2]** 2/9 4/20
**scrutiny [2]** 26/8 29/1
**se [11]** 11/7 11/13 11/16 11/24 12/9 12/23 14/16 14/18 30/12 32/24 33/15
**seal [2]** 12/13 12/14
**Seattle [1]** 2/8
**second [7]** 6/9 6/22 12/5 13/13 15/19 26/7 27/23
**secondly [2]** 12/23 15/16
**Security [2]** 13/19 14/13
**see [7]** 5/10 19/3 20/15 23/12 23/13 24/25 28/17
**seeking [1]** 16/16
**September [3]** 1/5 4/1 36/10
**sequence [1]** 31/20
**SERVICE [5]** 1/3 4/6 4/11 4/16 5/7
**settle [2]** 22/5 22/17
**settlement [7]** 23/18 23/20 23/22 33/22 34/14 34/15 34/19
**several [1]** 26/21
**she [1]** 6/15
**shifting [1]** 12/4
**short [1]** 21/9
**should [3]** 8/15 8/16 34/24
**shouldn't [1]** 16/23
**show [3]** 16/9 19/22 21/1
**showed [1]** 15/23
**shows [3]** 25/7 28/11 29/10
**side [1]** 29/2
**sides [1]** 33/22
**signature [3]** 36/8 36/8 36/9
**signed [1]** 36/8
**significant [2]** 27/15 32/10
**signing [1]** 36/5
**similar [2]** 16/5 29/21
**SIMON [1]** 1/12
**simply [3]** 7/25 11/1 32/2
**since [3]** 16/16 18/23 20/13
**situation [1]** 9/12
**situations [1]** 11/6
**slate [1]** 22/25
**slightly [1]** 16/13
**small [1]** 25/22
**sneeze [1]** 25/24
**so [33]** 7/23 9/23 10/9 10/11 10/13 11/11 11/21 11/23 12/14 12/15 15/1 15/12 15/20 16/12 18/5 18/23 20/20 20/22 23/2 24/16 24/21 25/7 27/2 27/3 27/6 27/10 27/22 28/9 29/5 31/17 31/22 32/13 32/25
**Social [2]** 13/19 14/13
**solution [1]** 11/22
**solve [3]** 10/2 20/11 21/3
**solved [1]** 10/25
**solving [1]** 14/1
**some [13]** 7/12 7/16 7/24 18/23 19/20 20/1 20/10 20/18 21/2 21/20 21/22 22/10 23/10
**somehow [1]** 32/14
**someone [3]** 8/10 9/1 34/17
**something [8]** 6/16 7/17 8/15 8/16 12/13 14/5 16/4 32/5
**sorry [2]** 13/24 16/24
**sort [1]** 7/2
**sought [1]** 27/21
**speak [1]** 31/10
**speaking [1]** 32/21
**speaks [1]** 23/24
**specificity [1]** 17/7
**spend [1]** 6/22
**spoke [1]** 27/23
**stale [1]** 25/3
**standard [3]** 20/22 32/9 32/10
**state [13]** 1/6 4/22 10/21 11/23 12/19 16/4 19/21 21/13 22/9 23/13 24/11 25/23 30/14
**State's [2]** 12/7 15/6
**stated [2]** 26/10 26/23
**statement [1]** 11/25
**states [6]** 1/1 1/13 2/22 21/20 21/25 22/4
**stating [1]** 7/13
**status [3]** 27/22 34/11 34/22
**step [1]** 24/24
**sticking [1]** 31/6
**still [8]** 13/12 14/3 14/8 17/25 20/23 22/18 30/22 32/10
**stop [1]** 10/17
**Street [1]** 2/11
**strike [1]** 9/2
**stuff [3]** 8/2 8/12 9/4
**subject [2]** 11/2 30/22
**submit [2]** 21/9 30/7
**submits [1]** 25/10
**submitted [1]** 9/19
**substantial [12]** 6/7 6/24 15/1 28/4 28/17 28/18 29/5 29/7 29/9 29/16 30/20 33/5
**such [1]** 13/1
**sufficient [1]** 7/20
**suggest [1]** 12/23
**suggested [1]** 15/17
**suggesting [1]** 21/12
**Suite [2]** 2/3 2/8
**summary [15]** 6/18 15/21 16/7 16/21 16/24 17/2 17/3 17/8 18/8 18/9 20/24 23/4 24/17 26/24 33/25
**suppose [1]** 26/18
**supposed [3]** 20/20 21/6 28/20
**Supreme [2]** 22/19 22/20
**sure [7]** 7/11 9/25 10/11 13/14 17/1 17/12 21/14
**survive [2]** 6/5 21/17
**SW [2]** 2/11 2/23
**system [8]** 8/23 9/20 10/21 25/8 27/5 30/4 30/4 30/14


## T


**table [3]** 4/13 12/22 14/19
**tailored [6]** 11/21 12/6 12/21 14/1 19/3 20/11
**take [6]** 12/22 22/10 22/18 24/6 24/24 26/12
**taken [3]** 23/2 34/10 34/12
**taking [2]** 14/18 19/19
**talk [3]** 7/4 8/1 23/21
**talking [4]** 29/8 29/25 30/2 30/3
**telephone [1]** 33/9
**tell [6]** 5/5 14/9 16/14 17/6 18/20 25/20
**tells [2]** 14/6 23/8
**terrific [1]** 33/25
**test [12]** 6/1 6/5 7/21 16/9 23/15 24/6 24/7 26/8 26/8 27/25 29/2 30/19
**Texas [1]** 21/25
**than [10]** 15/4 15/18 21/12 22/17 28/22 28/23 29/12 32/3 32/5 34/22
**Thank [2]** 23/23 35/2
**that [223]**
**that's [33]** 5/1 5/8 6/2 6/14 6/14 10/2 12/17 13/21 15/7 15/10 17/20 17/24 17/25 18/2 18/18 18/20 19/17 20/12 21/17 21/23 22/22 23/20 24/10 25/9 26/14 26/15 26/21 27/3 27/22 28/22 28/24 30/18 34/4
**the objections [1]** 20/21

T

**their [21]** 6/1 8/13 8/13 10/2 11/14 12/11 16/7 18/15 20/24 20/25 21/18 21/25 22/7 23/4 28/9 28/10 29/17 31/3 31/4 31/4 31/5
**them [5]** 14/11 19/13 24/18 27/1 27/21
**then [18]** 5/21 6/1 8/12 10/1 10/1 12/2 14/23 18/20 20/13 23/9 26/1 26/19 30/7 30/23 31/14 31/22 33/21 33/25
**there [45]**
**there's [2]** 21/15 25/14
**Therefore [1]** 21/4
**these [12]** 12/4 12/5 13/6 14/21 14/25 19/22 20/1 22/20 23/12 23/21 24/5 30/23
**they [46]**
**they're [7]** 16/16 18/1 18/1 20/14 20/25 27/2 31/6
**they've [2]** 18/13 18/23
**thing [5]** 6/12 9/14 14/9 14/11 15/15
**things [11]** 8/16 8/23 13/5 13/12 14/5 14/14 14/20 18/22 18/23 23/22 32/3
**think [34]** 6/15 7/8 7/9 7/12 7/12 7/15 8/20 9/7 11/3 12/8 12/17 13/21 14/3 15/3 15/6 15/16 16/3 16/12 17/10 17/14 17/20 20/1 20/21 21/10 21/15 22/19 23/16 23/20 27/7 27/12 29/1 29/8 30/18 32/21
**Third [2]** 2/8 2/23
**this [55]**
**those [21]** 5/16 6/13 11/6 13/9 13/12 14/5 14/17 14/20 14/22 18/6 18/7 18/22 20/19 21/25 22/4 24/12 24/15 24/21 25/17 25/18 32/12
**though [2]** 5/11 20/25
**three [7]** 2/3 2/5 24/24 25/17 27/9 27/10 33/8
**three o'clock [1]** 33/8
**through [3]** 11/19 14/7 24/19
**time [4]** 6/22 7/12 22/11 29/13
**timely [1]** 5/12
**today [1]** 21/12
**too [2]** 18/18 26/14
**towards [1]** 14/25
**transcript [3]** 1/11 36/6 36/7
**trial [13]** 16/16 16/16 16/19 17/16 17/18 17/21 19/2 19/22 23/5 23/7 26/1 26/4 34/2
**true [1]** 12/17
**twice [1]** 7/13
**two [21]** 6/1 6/5 6/13 6/21 7/21 15/18 16/8 18/4 18/6 18/7 18/25 21/5 21/17 22/16 23/8 23/16 24/6 25/14 25/22 30/19 33/6
**two-prong [8]** 6/1 6/5 7/21 16/8 21/17 24/6 25/22 30/19
**Tyler [4]** 25/15 25/20 25/23 26/23
**Tyler-hosted [1]** 25/20
**type [1]** 11/8
**typically [1]** 30/7

U

**uncertain [1]** 24/9
**under [15]** 7/15 8/5 10/23 11/5 11/7 12/13 12/14 15/20 15/21 16/2 17/25 22/6 30/19 34/10 34/13
**underlying [1]** 27/16
**understand [1]** 32/1
**understanding [8]** 10/15 10/24 13/14 19/6 19/14 19/25 21/19 22/3
**Understood [1]** 23/23
**UNITED [3]** 1/1 1/13 2/22
**unreasonable [3]** 7/18 26/16 26/17
**until [2]** 15/24 19/5
**up [5]** 10/9 15/23 20/14 22/19 33/15
**upheld [1]** 16/1
**upon [1]** 31/17
**upset [1]** 28/16
**us [6]** 4/15 4/16 6/1 6/3 12/18 16/25
**use [1]** 8/22
**user [1]** 30/6
**uses [2]** 25/9 25/10
**Utah [1]** 21/24
**UTCRs [2]** 13/11 13/14

V

**value [1]** 23/12
**variations [1]** 27/9
**vendor [1]** 25/15
**Ventura [4]** 6/6 16/1 21/11 31/24
**Vermont [2]** 21/24 29/19
**version [3]** 21/20 21/22 26/22
**versions [1]** 25/14
**very [8]** 16/5 17/22 25/22 27/19 27/20 29/24 30/16 32/10
**victims [1]** 14/14
**view [2]** 5/18 6/2
**viewed [1]** 6/16
**violate [1]** 11/23
**violated [1]** 30/15
**violation [2]** 10/10 15/25
**violations [2]** 15/2 15/4
**violence [13]** 10/8 10/16 10/23 11/1 11/5 12/2 12/9 13/1 13/1 13/2 13/17 14/14 30/13

W

**WA [1]** 2/8
**Wait [1]** 13/13
**Walters [2]** 2/10 4/22
**want [9]** 11/22 15/10 16/25 18/10 24/10 25/19 29/24 32/5 33/9
**wants [1]** 33/20
**was [16]** 6/17 6/18 9/13 15/19 15/20 15/22 15/25 16/1 22/7 26/12 26/15 29/22 31/5 31/16 31/19 31/22
**Washington [1]** 21/25
**way [23]** 6/14 6/14 6/15 7/19 8/4 9/15 9/24 10/2 11/18 12/25 13/23 14/15 14/25 15/5 16/15 17/23 18/7 21/2 22/23 23/21 24/8 24/13 31/16
**ways [2]** 25/18 31/25
**we [67]**
**we're [4]** 7/25 10/3 31/8 31/11
**weighed [1]** 22/6
**weighing [2]** 26/2 29/4
**well [19]** 7/10 8/20 9/18 14/3 15/6 15/9 16/6 16/20 16/22 17/10 18/13 19/14 19/25 20/7 20/13 21/7 27/21 28/22 31/3
**were [8]** 15/16 15/18 23/4 23/12 26/18 26/20 28/13 30/22
**weren't [2]** 15/23 15/24
**what [43]**
**what's [5]** 7/17 10/4 15/12 20/4 34/18
**whatever [2]** 29/10 34/16
**when [7]** 5/13 9/3 14/17 20/24 22/24 27/24 29/8
**where [11]** 9/12 18/25 19/15 20/24 24/15 26/1 27/22 29/13 29/20 30/20 31/11
**whether [21]** 7/19 11/4 17/11 18/1 18/1 18/3 19/2 20/18 24/10 25/21 26/9 26/20 27/8 27/12 28/3 28/16 33/5 33/23 33/25 34/1 34/14
**which [2]** 18/16 32/15
**while [1]** 23/13
**who [4]** 14/24 23/24 28/14 30/12
**whose [1]** 29/15
**why [20]** 7/24 8/15 10/25 11/12 11/21 12/4 12/5 12/15 13/6 14/1 18/20 19/22 19/23 19/23 20/14 21/25 26/5 30/18 32/8 33/21
**will [17]** 7/4 8/1 8/6 11/1 11/14 11/24 11/25 12/2 12/11 14/8 16/15 20/15 31/18 31/24 32/13 34/3 34/7
**William [1]** 4/15
**within [1]** 22/7

**W**

**without [3]** 11/5 12/3 36/7
**Women [5]** 10/9 10/16 10/24 11/5 12/9
**won't [3]** 8/12 10/1 11/4
**wonderful [1]** 17/24
**work [1]** 34/3
**worse [1]** 32/3
**worthwhile [1]** 23/16
**would [34]** 4/7 6/8 6/20 6/25 9/6 9/16 10/10 15/3 15/17 16/18 18/24 20/11 20/17 21/3 21/7 21/9 21/12 22/25 23/5 23/6 23/16 24/2 26/10 26/25 27/1 28/6 28/15 30/22 31/10 32/1 32/16 33/5 33/18 34/5
**wouldn't [1]** 8/24
**writes [2]** 5/11 6/4
**written [1]** 22/24
**wrong [6]** 8/11 11/8 16/13 18/2 18/3 20/14

**Y**

**Yeah [2]** 21/14 32/23
**year [4]** 25/21 26/13 26/15 26/16
**Yes [4]** 8/19 16/11 24/23 34/8
**yet [1]** 22/20
**York [1]** 21/24
**you [95]**
**you'd [1]** 32/4
**you're [4]** 16/23 16/24 17/3 18/11
**You's [1]** 5/1
**your [35]** 4/5 4/8 4/9 4/19 4/21 7/8 8/4 8/6 9/2 10/15 13/8 13/22 14/8 15/9 16/20 18/17 19/5 21/1 21/3 21/8 22/3 23/17 24/1 24/11 24/12 24/20 24/25 28/14 30/10 32/3 33/12 34/4 34/5 34/8 35/1
**Your Honor [17]** 4/5 7/8 10/15 13/8 13/22 14/8 15/9 16/20 19/5 21/8 22/3 23/17 24/1 24/25 30/10 34/4 35/1
**Your Honor's [1]** 34/5
**YY [2]** 1/4 4/7